2011 OK CR 18

**PRYOR**

v.

**STATE.**

No. F–2009–248.

Court of Criminal Appeals of Oklahoma.

June 23, 2011.

Clark O. Brewster, Robert R. Nigh, Jr., Brewster & Deangelis, Tulsa, OK, attorneys for defendant at trial.

Scott R. Gengras, Lee F. Berlin, Assistant District Attorneys, Tulsa, OK, attorneys for State at trial.

Clark O. Brewster, Robert R. Nigh, Jr., Darla S. Sedgwick, Brewster & Deangelis, Tulsa, OK, attorneys for appellant on appeal.

W.A. Drew Edmondson, Oklahoma Attorney General, Jennifer Blakeney Welch, Assistant Attorney General, Oklahoma City, OK, attorneys for appellee on appeal.

### SUMMARY OPINION

A. JOHNSON, Presiding Judge.

¶ 1 Appellant Susan Rollans Pryor was tried by jury in the District Court of Tulsa Count, Case No. CF–2008–691, and found guilty of First Degree Manslaughter in violation of 21 O.S.2001, § 711(2).[1] The jury recommended fifteen years imprisonment and the Honorable Tom C. Gillert, who presided at trial, sentenced Pryor accordingly. From this Judgment and Sentence, Pryor appeals.

¶ 2 Pryor's claim in her first proposition-that she was denied a fair trial because of prosecutorial misconduct-requires discussion and relief. Because we find reversal is required on that claim, we do not address her remaining claims.

¶ 3 Pryor shot and killed her friend and house-guest, Timothy Lannom who was stay-ing with her in her Tulsa home during an ice storm in December 2007. The State originally charged Pryor with First Degree Murder and, in the alternative, First Degree Manslaughter. Prior to jury selection, however, the State was permitted, over defense objection, to dismiss the alternative count of First Degree Manslaughter. Pryor moved for a directed verdict at the conclusion of the evidence based on a lack of proof of malice aforethought. The District Court agreed and instructed the jury, under 22 O.S.2001, § 850, that it was the court's advice that the evidence did not support a conviction for first degree murder. The court, however, left the ultimate decision up to the jury[2] and submitted instructions on first degree murder, heat-of-passion manslaughter, and self-defense.[3]

¶ 4 It is a rare case in the jurisprudence of this Court that a prosecutor's misconduct during closing argument is found to be so egregiously detrimental to a defendant's right to a fair trial as to require reversal. This is such a case.

¶ 5 In his opening salvo during first closing argument, the prosecutor told jurors:

> Now, as Mr. Gengras and I last night were upstairs talking about this case, going between sometimes anger, sometimes dismay, I was angry, he was dismayed, the question was is this some type of bizarro world where nothing makes sense, up is down, the rules of right and wrong don't apply, the rules of fairness? No, no. It's the confines of this courtroom.

(Tr. Vol. 4 at 510). In this argument, by expressing his own anger and sarcastically ridiculing the defense team as having turned the courtroom into a "bizarro world" where "nothing makes sense" and the "rules of right and wrong" and "fairness" "don't apply," counsel was injecting his own beliefs and emotions into the proceeding and invit-

---

1. First Degree Manslaughter is an 85% crime. 21 O.S.Supp.2007, § 13.1(3).

2. The district court instructed that "the decision concerning guilt or innocence to Murder in the First Degree or any lesser included offense is the exclusive province of the jury and thus is for your determination as guided by these instructions."

3. The district court found sufficient evidence of first degree manslaughter and, under *McHam v. State*, 2005 OK CR 28, ¶ 20, 126 P.3d 662, 669–70, submitted that charge as a lesser-related offense.

ing jurors to do likewise. This belittling of the defense and blatant appeal to emotions exceeds the bounds of fair comment on the evidence and strays into the prohibited realm of argument intended to arouse the passions and prejudices of the jury. This was improper argument. *See Ward v. State*, 1981 OK CR 102, ¶ 3, 633 P.2d 757, 758 ("[a]rguments beyond the scope of the evidence can only be intended to arouse the passions and prejudices of the jurors and are improper"); *ABA Standards for Criminal Justice: Prosecution and Defense Function* § 3–5.8(c) and (d) (3rd ed. 1993) ("The prosecutor should not make arguments calculated to appeal to the prejudices of the jury ... The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence").[4]

■ ¶ 6 Next, the prosecutor argued to the jury:

> You've looked at the evidence, weighed the evidence, seen the credibility, if you believe her story, walk her, acquit her, send her home. That's your job. Not mine, not the defendant's, not the ladies and gentlemen in the gallery. Yours. If you think that what she did on December 18, 2007 is okay, walk her. If you've been drinking the Kool Aid, you'll probably walk her.

(Tr. Vol. 4 at 523–24). This comment, based on the implied argument that jurors would be foolish to find Pryor not guilty (i.e., knowingly drinking poisoned Kool–Aid)[5], is an emotional appeal that is akin to one we found improper in *Duckett v. State*, 1995 OK CR 61, ¶ 43, 919 P.2d 7, 19, where the prosecutor told the jury, "The evidence says he's guilty. Don't you be a party to letting a cold-blooded killer loose." In *Duckett*, the prosecutor implored jurors to return a guilty verdict on an emotional basis (i.e., you will share the blame for allowing a cold-blooded killer to be set free if you acquit) and in this instance the prosecutor was likewise urging a guilty verdict on an emotional basis (i.e., you will be foolish if you acquit). As an exhortation to convict based on emotion rather than the evidence, the comment was improper. *See* ABA Standards for Criminal Justice: *Prosecution and Defense Function* § 3–5.8(c) and (d) (3rd ed. 1993).

■ ¶ 7 A different prosecutor opened the State's final closing with a reference to testimony by two police officers who spoke to Pryor at the homicide scene. Both officers mentioned that Pryor told them that she knew the Chief of Police and the head of the detective section of the Tulsa Police Department. Beyond these brief statements, however, there was no evidence suggesting that Pryor ever attempted to improperly influence the police investigation, or that she or her attorneys attempted to improperly influence the course of the prosecution or trial. Nevertheless, despite this lack of evidence, the prosecutor repeatedly suggested to the jury that Pryor attempted to use her influence with people in high places to "manipulate" the course of the prosecution and trial.

---

4. This Court has previously adopted and relied on *The ABA Standards for Criminal Justice* in reviewing the propriety of a prosecutor's closing arguments. *See e.g., Tobler v. State*, 1984 OK CR 90, ¶ 16, 688 P.2d 350, 354; *Dupree v. State*, 1973 OK CR 397, ¶ 11, 514 P.2d 425, 427; *Ray v. State*, 1973 OK CR 263, ¶ 19, 510 P.2d 1395, 1401. The current version of this document, now entitled *ABA Standards for Criminal Justice: Prosecution and Defense Function* (3rd ed. 1993), is available online at: *http://www.americanbar.org/publications/criminal_justice_section_archive/crimjust_standards_pfunc_toc.html* and *http://www.americanbar.org/content/dam/aba/publications/criminal_justice_standards/prosecution_defense_function.authcheckdam.pdf*.

5. The phrase "drinking the Kool–Aid" is a slang expression that the online compendium *Wikipedia* defines as:

> [A] phrase and metaphor, used in the United States and Canada, that means to become a firm believer in something, to accept an argument or philosophy wholeheartedly or blindly without critical examination. The term originated with the November 1978 Jonestown Massacre, where members of the Peoples Temple were said to have committed suicide by drinking Kool–Aid laced with cyanide.
> ...
> [T]he phrase is commonly used in a variety of contexts to describe blind, uncritical acceptance or following, generally in a derogatory sense.

*Wikipedia*, Drinking the Kool–Aid, *http://en.wikipedia.org/w/index.php?title=Drinking_the_Kool–Aid&oldid=427669802* (May 20, 2011, 11:45 CDT).

Hammering on the theme of manipulation again and again, the prosecutor asked at least seven times during the course of closing argument:

> Do you think that the efforts to manipulate stopped on December 18th of 2007 or do you think that they continue in this courtroom?

(Tr. Vol. 4 at 546, 547, 548–49, 550, 552, 553, 556). Defense counsel objected once to these statements, but the objection was overruled.[6]

¶ 8 In one instance, while pursuing this manipulation theme, the prosecutor sarcastically referred to the judge's evidentiary rulings that allowed some of Pryor's biographical information into evidence and suggested that those rulings were the result of improper influence exerted by Pryor or her attorneys. He also suggested that Pryor's expert's testimony was the result of improper collusion. Specifically, the prosecutor argued:

> Isn't it interesting to note that in her biography, for whatever reason it was relevant, and in her resume, for whatever reason that was found to be relevant in this case, that she is a real estate agent, not a board certified doctor of internal medicine. Yet the defense brought up that when she [Pryor] called 9–1–1, she told them that he [the victim] went crazy from Prednisone. Golly, how convenient that their expert witness made the same diagnosis that a real estate agent made on the phone to 9–1–1 and that she told Officer Miller in the police car. Isn't that convenient that as a real estate agent she was also able to make

this absolutely extraordinary diagnosis, statistically improbable that this would ever happen and yet they were both able to arrive at that conclusion?

> Do you think the efforts to manipulate ended that day or do you think they continued into this courtroom?

(Tr. Vol. 4 at 553). In this instance, while the prosecutor appears to be arguing the evidence, the backhanded criticism of the judge's evidentiary rulings embodied in these comments, as well as the suggestion that those rulings may have been the result of some manipulation by Pryor, and the further suggestion that Pryor's expert was merely parroting what Pryor or her attorneys told him to say, are all arguments for inferences that go well beyond any evidence produced at trial. By weaving this thread of innuendo into his argument, the prosecutor was appealing to jurors' emotions and prejudices. This is improper argument. *See Green v. State*, 1980 OK CR 34, ¶ 9, 611 P.2d 262, 265 (holding that right of liberal argument "does not permit the prosecutor to bolster his argument by implications which are unsupported by competent evidence offered at trial"); *Fry v. State*, 1950 OK CR 65, 91 Okla.Crim. 326, 218 P.2d 643, 652 (holding that while counsel are entitled to great latitude and wide freedom in closing argument, such latitude "does not authorize the use of prejudicial statements calculated to inflame the passions of the jury"); *ABA Standards for Criminal Justice: Prosecution and Defense Function* § 3–5.8(c) and (d) (3rd ed. 1993).

---

6. At least one jurisdiction has found a similar claim of manipulation made in closing argument to be improper. Specifically, in *Wicklow v. State*, 43 So.3d 85, 87–88 (Fla. 4th DCA 2010), the Florida District Court of Appeal explained:

[W]hen the prosecutor made the following argument later in closing argument, "The only conflicts are between the defense attorney and the evidence. That's it. Don't be manipulated ... don't be gullible," she was no longer focusing on the evidence, but instead on he-perception of the integrity and character of defense counsel. "Gullible," an adjective, means "easily duped." *Merriam–Webster's Online Dictionary*, www.merriam-webster.com. In effect, the prosecutor, instead of focusing on the evidence, argued to the jury that defense counsel was trying to manipulate the jury and that if they agreed with his

argument then they were being easily duped. Claims of manipulation and deception by opposing counsel have no place in a closing argument. Resorting to personal attacks on defense counsel is an improper trial tactic which can poison the mind of the jury. Further, improper prosecutorial remarks can constitute reversible error when such remarks may have prejudiced the jury into finding the defendant guilty. Although defense counsel raised objections to these comments which the court overruled, it is worthy of note that it is never acceptable for one attorney to effectively impugn the integrity or credibility of opposing counsel before the jury; even in the absence of a contemporaneous objection, such comments about opposing counsel made during closing argument are fundamentally erroneous. (Internal case citations omitted).

¶ 9 Again, at another point during final closing, while actually arguing the evidence for first degree murder, the prosecutor ridiculed the judge's instruction to the jury that, in his opinion, the evidence was insufficient for first degree murder. Specifically, the prosecutor told jurors:

> And they tell you we haven't proven our case. Really? The judge is advising you that a reasonable jury could not find her guilty based on this evidence? Isn't that just breathtaking?

(Tr. Vol. 4 at 555). He then continued:

> Do you think the efforts to manipulate ended December 18th or do you think they continued in this courtroom? And this Court is advising you that you can't find her guilty based on this evidence. Isn't that just breathtaking?

(Tr. Vol. 4 at 556). Simply arguing the evidence for first degree murder, despite the judge's admonition to the jury that in his opinion the evidence was insufficient, would have been proper in this instance. It was improper, however, for the prosecutor to impugn the integrity of the court by suggesting, without evidence, as he did here, that the judge's opinion of the evidence was the result of some behind-the-scenes manipulation by Pryor. This suggestion of manipulation or deception could only have been intended to inflame jurors against Pryor. This was improper argument. *See Fry*, 1950 OK CR 65, 91 Okla.Crim. 326, 218 P.2d at 652; ABA Standards for Criminal Justice: Prosecution and Defense Function § 3–5.8(c) and (d) (3rd ed. 1993).

¶ 10 Finally, nearing the end of his closing argument, the prosecutor appealed to the jury for sympathy for himself and his co-prosecutor in language that strongly suggested that the fix was in against them by some unnamed powerful persons. Specifically, the prosecutor told jurors:

> *We're like the fighter in some movie. We're supposed to take a dive and just, keep, answering the bell over and over and over again.* So I'm sorry if they [defendant and defense counsel] feel like we've been too hard but we have a job to do. And I'm sorry that they feel that way. I'm not sorry for what we've done. Our job is to stand up for the victims of violent crime and we've done that. And we don't apologize for it.
>
> We believe in things like truth and justice and we believe evidence should come from the witness stand and it shouldn't be injected into the case by attorneys. And *maybe these are old fashioned notions, maybe they're not accepted in polite society any more, but we did our job in this case.*
>
> This is your community. This decision is in your hands. *You can reject influence and manipulation* ... I started out by telling you when you just put the defendant and the victim side by side, this could be an easy decision. It would be very easy based on what you know to just *go back there and render a verdict of not guilty. And it would make a lot of powerful people happy* [objection overruled]. *We're not here to make them happy.*

(Tr. Vol. 4 at 560–61) (emphasis added). The not-so-subtle thrust of this argument was that some unnamed "powerful people" were expecting the prosecutors to throw the case (i.e., take a dive), but the underdog prosecutors were bravely resisting. The argument then urges jurors to side with the prosecutors and return a guilty verdict as pushback against the influence of the unnamed powerful outsiders. The problem with this argument is that it is not based on facts in evidence. That is, there is no evidence in the record that anyone asked prosecutors to throw the case (i.e., take a dive) or that any "powerful people" had somehow intervened in the trial to influence or manipulate its outcome. As an argument based on an extraordinary claim of corruption of the trial process, a claim lacking any evidentiary basis, and having no relevance to Pryor's guilt or innocence of the charged crimes, this argument can only be seen as an attempt by prosecutors to inflame the passions and emotions of jurors against Pryor in an effort to obtain a guilty verdict. This argument was highly improper. *See Fulks v. State*, 1971 OK CR 69, ¶ 19, 481 P.2d 769, 771 ("[t]he desire for success should never induce [a prosecutor] to endeavor to obtain a verdict by argument based on anything except the

evidence in the case and the conclusions legitimately deductible from the law applicable to the same"); *ABA Standards for Criminal Justice: Prosecution and Defense Function* § 3–5.8(c) and (d), and § 3–5.9 (3rd ed. 1993) ("[t]he prosecutor should not intentionally refer to or argue on the basis of facts outside the record whether at trial or on appeal, unless such facts are matters of common public knowledge based on ordinary human experience or matters of which the court may take judicial notice").

¶ 11 Despite finding these multiple instances of improper argument, we do not automatically reverse. Allegations of prosecutorial misconduct warrant reversal only if "the cumulative effect was such [as] to deprive the defendant of a fair trial." *Warner v. State*, 2006 OK CR 40, ¶ 197, 144 P.3d 838, 891; *see also Hogan v. State*, 2006 OK CR 19, ¶¶ 87–88, 139 P.3d 907, 935 ("[w]e evaluate the alleged misconduct within the context of the entire trial, considering not only the propriety of the prosecutor's actions, but also the strength of the evidence against the defendant and the corresponding arguments of defense counsel").

¶ 12 in this instance, the record shows that many of the prosecutor's remarks were not met with contemporaneous objection by defense counsel, but some were. Despite this, a trial court has a duty to ensure that final argument is kept within proper bounds. *McCarty v. State*, 1988 OK CR 271, ¶ 16, 765 P.2d 1215, 1221.

¶ 13 The evidence against Pryor was sufficient to support a first degree manslaughter conviction, but it was by no means overwhelming. Given the nature and quantity of improper argument advanced in this case, both objected-to and not, it is difficult to conclude that the prosecutor's repeated inflammatory appeals to jurors' emotions and prejudices, belittling of the defense, and arguing facts not in evidence, had no effect on the jury's assessment of the evidence and findings of guilt. The totality of improper argument in this case deprived Pryor of a fair trial and therefore requires relief. We reverse and remand this matter for a new trial.

## DECISION

¶ 14 The Judgment and Sentence of the District Court is **REVERSED** and **REMANDED** for a new trial. Pursuant to Rule 3.15, *Rules of the* Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2010), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

LEWIS, V.P.J., LUMPKIN and C. JOHNSON, JJ., Concur.

SMITH, J., Recuse.