ROWLAND, JUDGE:
 

 ¶ 1 Appellant Renese Bramlett was convicted by jury in the District Court of Tulsa County, Case No. CF-2015-4266, of First Degree Murder, in violation of 21 O.S.2011, § 701.7. The jury assessed punishment at life imprisonment without the possibility of parole. The Honorable William J. Musseman, District Judge, presided at trial and sentenced Bramlett accordingly. Bramlett appeals his Judgment and Sentence, raising the following issues:
 

 (1) whether his statement should have been suppressed as fruit of the poisonous tree because his arrest violated Oklahoma law and was therefore illegal;
 

 (2) whether the admission of his video recorded interview was error which violated his rights under the Fourteenth Amendment;
 

 (3) whether he was denied his right to due process and a fair trial by the admission of evidence of prior bad acts;
 

 (4) whether inadmissible hearsay was admitted in violation of his rights under the Confrontation Clause;
 

 (5) whether a discovery violation deprived him of his right to a fair trial;
 

 (6) whether the trial court erred in ruling that Corporal Shilling's testimony was lay testimony rather than expert testimony; and
 

 (7) whether prosecutorial misconduct deprived him of a fair trial requiring modification of his sentence.
 

 ¶ 2 We affirm the judgment but vacate the sentence of the district court and remand the case for resentencing.
 

 Background
 

 ¶ 3 On the night of March 19, 2015, Michelle Spence took her fourteen and eleven year-old sons to their grandparents' house to spend the night. Between 6:00 and 7:00 p.m. the following day, their grandfather took the boys home to Spence's house and dropped them off. Their mother wasn't home and when Spence had not come home by 10:00 p.m., the boys walked down the street to see if she was at Renese Bramlett's apartment.
 
 [1]
 
 When the two boys arrived at Bramlett's apartment complex, they saw their mother's vehicle, a blue Mercedes-Benz SUV, parked in the parking lot of the apartment complex across the street. They tried to call Bramlett but he did not answer. The boys walked around the apartments and when they did not find their mother, they went to her vehicle to charge their phone. Inside the SUV they found their mother dead in the backseat. She was naked and wrapped in a blanket. The boys went to an apartment for help and the occupants called the police. Michelle Spence's death was subsequently ruled a homicide caused by asphyxia due to strangulation.
 

 ¶ 4 The case against Bramlett was pieced together from information the police gathered from Spence's neighbors, video surveillance footage from a security guard at the apartment complex where Spence's SUV was found, video footage from a QuickTrip located between Spence's house and Bramlett's apartment, and cell phone records from Spence's phone and from Bramlett's phone. Cell phone records indicated that Spence called Bramlett from her home at 10:48 p.m. on March 19, 2015. At around 11:11 p.m. video surveillance from a QuickTrip located between Spence's house and Bramlett's apartment showed a Cadillac similar to Bramlett's traveling on 129th East Avenue in the direction of Spence's house. Cell phone records showed that Bramlett's phone was
 taken to Spence's house around this time and remained there until after 2:00 a.m. when it was taken back to his apartment. Spence's phone remained at her house until 2:10 a.m. when it, too, was taken to Bramlett's apartment. Video Surveillance from the Quicktrip showed a vehicle that looked like Spence's SUV traveling on 129th East Avenue toward Bramlett's apartment around this same time at 2:14.
 

 ¶ 5 A security guard patrolling several apartment complexes in his vehicle noticed Spence's SUV in the Stonecrest apartment complex across the street from Bramlett's apartments during his patrol at 3:57. The SUV had not been there when he drove by earlier at 11:07.
 

 ¶ 6 At approximately 6:45 a.m. on March 20, 2015, when Spence's neighbor left his house to go to work, there was a dark Cadillac blocking his driveway. Another neighbor also noticed the Cadillac between 7:30 and 7:45 a.m. She had seen it at Spence's residence before. Video surveillance from the QuickTrip showed an African-American man with a body type similar to Bramlett's walking in the direction of Spence's house at about 7:30 a.m. Approximately 28 minutes later the QuickTrip video surveillance showed a green Cadillac traveling in the direction of Bramlett's apartment.
 

 ¶ 7 Cell phone records showed that a call was made from Bramlett's phone to the bus station and that Spence's phone was at the bus station at 1:47 p.m. on March 20, 2015. That was the location of the last activity on Spence's phone. Bramlett's Cadillac was discovered later parked near the bus station.
 

 ¶ 8 Bramlett was subsequently located in Chicago, Illinois. He was arrested on a material witness warrant and taken into custody in Chicago where he was interviewed by Tulsa detectives on July 22, 2015. During this interview, Bramlett denied seeing Spence on the night she was killed; he claimed to have last seen her several days earlier. When advised that the detectives had evidence to the contrary, Bramlett terminated the interview. He was arrested, charged with first degree murder, and returned to Oklahoma to stand trial.
 

 ¶ 9 Bramlett testified at his trial. He acknowledged that he and Spence had been friends since 2012 and although they had been boyfriend/girlfriend in the past, they were not romantically involved at the time of her death. They remained friends because they used drugs together multiple times a week; their drug of choice was PCP. Bramlett testified that on Thursday, March 19, 2015, Spence contacted him right before he got off work around 10:30. He went home, got some PCP, and went over to her house. They smoked the PCP and when they had used all that he brought over, she wanted more. They got in her car and she drove him to his apartment where she left him to go meet her dealer to get more PCP. Bramlett testified that he made her leave her phone with him so that she would be sure to come back to get him. He wanted her to take him back to her house to get his car so that he would not have to walk there to get it. Bramlett testified that he eventually went to sleep until morning. When he awoke and Spence had not come back or called he started walking to her house to get his car. Bramlett testified that went he returned to his apartment complex in his car he noticed Spence's SUV parked in that parking lot of the complex across the street. He thought she had a drug deal there and started panicking because he was worried that something went wrong. Bramlett testified that he started operating out of fear because he knew that he was one of the last people to see her. He called the bus station, bought a ticket to Chicago, and left that day. He testified that Spence's phone died so he threw it into the trash at the bus station. Bramlett acknowledged that the QuickTrip video introduced by the State of the car driving by and person walking could have been his car and him. He denied that he killed Spence.
 

 1. Legality of Arrest and Admissibly of Statement
 

 ¶ 10 Bramlett argues that his statement to the police should not have been admitted at trial because it was made during an illegal arrest and detention and was therefore fruit of the poisonous tree. Bramlett raised the issue below and appeals the trial court's ruling overruling his objection to the
 admission of his statement. This Court reviews a trial court's ruling on a motion to suppress for an abuse of discretion.
 
 State v. Pope
 
 ,
 
 2009 OK CR 9
 
 , ¶ 4,
 
 204 P.3d 1285
 
 , 1287.
 
 See also
 

 Gomez v. State
 
 ,
 
 2007 OK CR 33
 
 , ¶ 5,
 
 168 P.3d 1139
 
 , 1141. In reviewing a trial court's decision, we defer to the trial court's findings of fact unless they are clearly erroneous.
 
 Gomez
 
 ,
 
 2007 OK CR 33
 
 , ¶ 5,
 
 168 P.3d at 1141-42
 
 . We review the trial court's legal conclusions derived from those facts
 
 de novo
 
 .
 

 Id.
 

 ¶ 11 As a general rule, a statement obtained through custodial interrogation after an illegal arrest should be excluded unless the chain of causation between the illegal arrest and the statement is sufficiently attenuated so that the confession was "sufficiently an act of free will to purge the primary taint."
 
 Wong Sun v. United States
 
 ,
 
 371 U.S. 471
 
 , 486,
 
 83 S.Ct. 407
 
 , 416-417,
 
 9 L.Ed.2d 441
 
 , 454 (1963).
 
 See also
 

 Matthews v. State
 
 ,
 
 1998 OK CR 3
 
 , ¶ 12,
 
 953 P.2d 336
 
 , 341-42 (post-arrest statements made by an accused subsequent to an illegal arrest are potentially fruit of the poisonous tree and should be suppressed unless the making of such statements was an act of free will sufficient to purge the primary taint of the unlawful invasion).
 

 ¶ 12 Bramlett asserts that when Oklahoma authorities suspected his involvement in Spence's murder but did not yet have enough information to charge him, they issued a material witness warrant. He was taken into custody in Chicago on the material witness warrant and Tulsa detectives traveled to Chicago to ask his consent for an interview which he granted. Bramlett asserted below and again on appeal that because his arrest and detention on the material witness warrant was illegal, his statement made during the illegal arrest and detention should have been suppressed.
 
 [2]
 

 ¶ 13 Bramlett's complaint concerns his extradition to Oklahoma from Illinois under the Uniform Criminal Extradition Act (Extradition Act) ( 22 O.S.2011, §§ 1141.1 - 1141.30 ) and his summons from Illinois to Oklahoma as a material witness under The Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings (Uniform Act) ( 22 O.S.2011, §§ 721 - 727 ). While failure to follow the procedural requirements of either of these Acts would be relevant to a determination of whether Bramlett was properly removed from Illinois to Oklahoma, the allegation that he was removed to Oklahoma in violation of the procedural requirements of these Acts is not relevant to deciding whether his statement to the Tulsa detectives made before his removal was tainted by an illegal arrest and detention.
 

 ¶ 14 The specific question before us on appeal is whether Bramlett was under legal arrest and detention on a material witness warrant at the time he was interviewed in Chicago by the Tulsa Detectives. That determination requires review of the arrest warrant and related documents. Neither the material witness warrant nor any documents associated with it are included in the record before this Court on appeal. "In Oklahoma a defendant bears the burden to provide a sufficient record upon which this Court may determine the issue raised."
 
 Hill v. State
 
 ,
 
 1995 OK CR 28
 
 , ¶ 10,
 
 898 P.2d 155
 
 , 160.
 
 See also
 

 Boyd v. State
 
 ,
 
 1987 OK CR 211
 
 , ¶ 11,
 
 743 P.2d 674
 
 , 676. Failure to provide an adequate record waives review of the error on appeal.
 
 Hill
 
 ,
 
 1995 OK CR 28
 
 , ¶ 10,
 
 898 P.2d at 160
 
 . Absent inclusion in the record of the material witness warrant and supporting documentation, this Court cannot decide this issue.
 
 [3]
 

 ¶ 15 We cannot find on this record that the trial court abused its discretion in denying his motion to suppress the statement. Relief is not required.
 

 2. Video Interview
 

 ¶ 16 Bramlett's videotaped interview with detectives at the police station in Illinois showed him in the interview room in an orange jumpsuit and handcuffs which appeared to be fastened to his body. Prior to its admission into evidence, defense counsel objected to this exhibit on the grounds that the videotape depicted him in custody and was unnecessarily prejudicial. Counsel asked that the audio of the conversation be played for the jury but the video be omitted so that the jury would not see Bramlett handcuffed and in the jail jumpsuit. This request and objection was overruled because the trial court found it important for the jury to see Bramlett's demeanor during the interview. Bramlett complains on appeal that this ruling was error. Decisions on the admissibility of evidence are left to the sound discretion of the trial court and this court will not disturb the trial court's ruling absent a clear showing of abuse and resulting prejudice.
 
 Baird v. State
 
 ,
 
 2017 OK CR 16
 
 , ¶ 37,
 
 400 P.3d 875
 
 , 885,
 
 quoting
 

 Jones v. State
 
 ,
 
 2006 OK CR 5
 
 , ¶ 48,
 
 128 P.3d 521
 
 , 540.
 

 ¶ 17 The United States Supreme Court has held that, "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial."
 
 Deck v. Missouri
 
 ,
 
 544 U.S. 622
 
 , 629,
 
 125 S.Ct. 2007
 
 , 2012,
 
 161 L.Ed.2d 953
 
 (2005).
 
 See also
 

 Ochoa v. State
 
 ,
 
 2006 OK CR 21
 
 , ¶ 21,
 
 136 P.3d 661
 
 , 667-68. In
 
 Deck
 
 , the Court reasoned that routine use of visible shackling during the guilt phase of trial undermines the presumption of innocence, interferes with the accused's ability to communicate with his lawyer and participate in his own defense, and is an affront to the dignity of judicial proceedings.
 
 Deck
 
 ,
 
 544 U.S. at 631-32
 
 ,
 
 125 S.Ct. at 2013
 
 . Additionally, 22 O.S.2011, § 15 provides:
 

 No person can be compelled in a criminal action to be witness against himself; nor can a person charged with a public offense be subjected before conviction to any more restraint than is necessary for his detention to answer the charge, and in no event shall he be tried before a jury while in chains or shackles.
 

 ¶ 18 Bramlett argues that although not specifically barred by statute or case law, these same concerns should have prohibited the jury from viewing him in jail clothing and handcuffs in the videotaped interview. Bramlett's argument is unpersuasive. Clearly, his appearance in the video in handcuffs and jail clothing had no bearing on his ability to communicate with his lawyer nor was it an affront to the judicial proceedings. While it is easy to understand how viewing a defendant in handcuffs and jail clothing during trial might risk diluting the presumption of innocence, the same cannot be said about exposure to a video showing the defendant in jail clothing and handcuffs during an interview prior to trial. As the State argues, most jurors would not be surprised by the fact that a defendant was handcuffed and wearing jail clothing while in jail prior to trial.
 
 See
 

 Gilbert v. State
 
 ,
 
 1997 OK CR 71
 
 , ¶¶ 80-81,
 
 951 P.2d 98
 
 , 119, (rejecting a similar claim where a defendant was not tried in handcuffs or shackles but was seen restrained by such in a newspaper photograph introduced at trial). The concerns which arise when a criminal defendant appears at trial in jail clothing or shackles were not implicated under the circumstances of this case. The same degree of potential prejudice was simply not present and we decline to extend the
 
 Deck v. Missouri
 
 ruling to such situations. The trial court's ruling, that it was important that the jurors see Bramlett's demeanor during the interview to determine whether his statement was voluntary or the product of coercion,
 was not an abuse of discretion. The video of the interview was relevant and its probative value was not outweighed by the danger of unfair prejudice.
 
 See
 
 12 O.S.2011, §§ 2402, 2403. This proposition requires no relief.
 

 3. Evidence of Prior "Bad Acts"
 

 ¶ 19 Prior to trial the State filed a notice of its intent to introduce evidence of other bad acts pursuant to 12 O.S.2011, § 2404(B) as is required by
 
 Burks v. State
 
 ,
 
 1979 OK CR 10
 
 , ¶ 12,
 
 594 P.2d 771
 
 , 773, overruled in part on other grounds in
 
 Jones v. State
 
 ,
 
 1989 OK CR 7
 
 , ¶ 7,
 
 772 P.2d 922
 
 , 925. Defense counsel objected and after a hearing on the matter the objection was overruled. Counsel renewed the objection prior to the introduction of this evidence at trial thus preserving the error for review on appeal. Bramlett asserts on appeal that the trial court's ruling on the admissibility of this evidence was error; we review the district court's ruling for an abuse of discretion.
 
 Miller v. State
 
 ,
 
 2013 OK CR 11
 
 , ¶ 88,
 
 313 P.3d 934
 
 , 966. "An abuse of discretion is any unreasonable or arbitrary action made without proper consideration of the relevant facts and law, also described as a clearly erroneous conclusion and judgment, clearly against the logic and effect of the facts."
 
 Mitchell v. State
 
 ,
 
 2016 OK CR 21
 
 , ¶ 13,
 
 387 P.3d 934
 
 , 940. As this claim was properly preserved, the State must demonstrate on appeal that admission of the challenged evidence "did not result in a miscarriage of justice or constitute a substantial violation of a constitutional or statutory right."
 
 Welch v. State
 
 ,
 
 2000 OK CR 8
 
 , ¶ 10,
 
 2 P.3d 356
 
 , 366.
 

 ¶ 20 Any "criminal conviction obtained through a trial must be based upon evidence establishing that the defendant committed the charged crime(s), rather than evidence of other offenses."
 
 Miller
 
 ,
 
 2013 OK CR 11
 
 , ¶ 89,
 
 313 P.3d at 966
 
 . While evidence of other crimes or bad acts is not admissible to prove the character of a person in order to show action in conformity therewith, Oklahoma law specifically provides that evidence that a defendant has committed "other crimes" or "bad acts" may be admissible at trial to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. 12 O.S.2011, § 2404(B). This Court has held that:
 

 [I]n order to be admissible, evidence that a defendant has committed another crime or "other crimes": (1) must be probative of a disputed issue in the case being tried; (2) that there must be a "visible connection" between the charged crime(s) and the evidence sought to be introduced; (3) that the evidence of the other crime(s) must be necessary to support the State's burden of proof in the case being tried; (4) that the evidence of the other crime(s) sought to be introduced must be clear and convincing; and (5) that the probative value of the other crime(s) evidence must outweigh any unfair prejudice to the defendant resulting from its introduction.
 

 Miller
 
 ,
 
 2013 OK CR 11
 
 , ¶ 89,
 
 313 P.3d at 966
 
 (internal footnotes omitted). Additionally, the trial court must issue contemporaneous and final limiting instructions.
 
 Welch
 
 ,
 
 2000 OK CR 8
 
 , ¶ 8,
 
 2 P.3d at 365
 
 .
 

 ¶ 21 The evidence of other "bad acts" at issue in this case was evidence that approximately sixteen months before Spence was killed, around November 9, 2013, Bramlett beat and strangled Spence resulting in her having to go to the hospital. The emergency room physician who treated Spence when she arrived at the hospital testified that Spence told him that her boyfriend had assaulted her. Michelle Spence's sister, Stephanie Spence, testified that Bramlett was Michelle's boyfriend at the time of the assault. Bramlett argues that this evidence did not fall within any of the exceptions listed in Section 2404(B). We disagree. Evidence of previous altercations between spouses or those involved in a close or dating relationship is relevant to show motive and intent.
 
 See
 

 Cuesta-Rodriguez v. State
 
 ,
 
 2010 OK CR 23
 
 , ¶ 27,
 
 241 P.3d 214
 
 , 226 ;
 
 Eizember v. State
 
 ,
 
 2007 OK CR 29
 
 , ¶ 87,
 
 164 P.3d 208
 
 , 232 ;
 
 Harris v. State
 
 ,
 
 2004 OK CR 1
 
 , ¶ 35,
 
 84 P.3d 731
 
 , 747 ;
 
 Short v. State
 
 ,
 
 1999 OK CR 15
 
 , ¶ 40,
 
 980 P.2d 1081
 
 , 1097.
 

 ¶ 22 In the present case, the evidence that Bramlett had strangled Spence on a prior occasion was relevant to establish both identity and intent and there was a connection
 between the evidence of the prior bad act and the crime charged in the present case. Furthermore, the evidence of the prior assault was clear and convincing and supported the State's burden of proof. The probative value of the evidence of the prior bad act was not substantially outweighed by the danger of unfair prejudice; it was relevant evidence admissible under 12 O.S.2011, § 2404(B). The court gave a contemporaneous limiting instruction in connection with the introduction of this evidence instructing the jury that they could not consider the evidence of other bad acts as proof of guilt or innocence of the offense charged; it was to be considered solely on the issue of Bramlett's alleged motive, intent, common scheme or plan or absence of mistake and accident. A proper limiting instruction was also given to the jury at the end of trial. The trial court did not abuse its discretion in allowing introduction of this evidence. Relief is not required.
 

 4. Hearsay and Confrontation
 

 ¶ 23 Bramlett argues that the trial court erred in allowing the State to prove his prior bad act with inadmissible hearsay. As Bramlett did not raise this challenge at trial, he has waived appellate review of this issue for all but plain error.
 
 Hogan v. State
 
 ,
 
 2006 OK CR 19
 
 , ¶ 38,
 
 139 P.3d 907
 
 , 923. To be entitled to relief for plain error, an appellant must show: "(1) the existence of an actual error (i.e., deviation from a legal rule); (2) that the error is plain or obvious; and (3) that the error affected his substantial rights, meaning the error affected the outcome of the proceeding."
 
 Hogan
 
 ,
 
 2006 OK CR 19
 
 , ¶ 38,
 
 139 P.3d at 923
 
 . "This Court will only correct plain error if the error seriously affects the fairness, integrity or public reputation of the judicial proceedings or otherwise represents a miscarriage of justice."
 
 Stewart v. State
 
 ,
 
 2016 OK CR 9
 
 , ¶ 25,
 
 372 P.3d 508
 
 , 514.
 

 ¶ 24 Bramlett argues on appeal that Stephanie Spence's testimony that he was Michelle Spence's boyfriend when Michelle was strangled in November of 2013 was inadmissible because it was hearsay which fell under no exception to the hearsay rule. He claims that Stephanie Spence's knowledge about the status of his and Michelle Spence's relationship during that time could only have been based upon what Michelle Spence told her and that Stephanie Spence admitted as much at trial. This argument is not supported by the record. The record shows that defense counsel actually made this argument prior to trial during a hearing on the State's notice of intent to introduce evidence of other bad acts. The prosecutor responded that Stephanie Spence's testimony about Michelle Spence's and Bramlett's relationship would not be hearsay because her knowledge of the relationship was based on her personal observations; she socialized with Michelle and Bramlett during this time and she knew from her observations that Bramlett was Michelle Spence's boyfriend when she was assaulted. Defense counsel did not object to Stephanie Spence's testimony at trial, presumably because he anticipated her to further clarify how she knew that Bramlett was her sister's boyfriend at the time of the assault. The record does not support Bramlett's claim that Stephanie Spence's testimony was hearsay.
 
 [4]
 
 The admission of this testimony was not error, plain or otherwise.
 

 ¶ 25 Bramlett also argues in this proposition that the introduction of Stephanie Spence's testimony violated his right to confrontation because the Confrontation Clause forbids the admission of testimonial hearsay.
 
 See
 

 Crawford v. Washington
 
 ,
 
 541 U.S. 36
 
 , 53-54,
 
 124 S.Ct. 1354
 
 , 1365,
 
 158 L.Ed.2d 177
 
 (2004) (The United States Supreme Court held that the Sixth Amendment's right to confrontation bars the admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination."). Again, the record does not support Bramlett's claim that the testimony at issue was hearsay. Stephanie Spence's testimony was based on her personal observations and she was available
 for cross examination at trial. Accordingly, his claim that the testimony violated his constitutional right to confrontation fails.
 

 5. Discovery
 

 ¶ 26 Prior to trial defense counsel filed a motion to produce requesting that the State disclose all material in the State's possession which was favorable to the defendant or exculpatory in nature. In his motion the defendant requested that the trial court "conduct an
 
 in camera
 
 inspection of the District Attorney's file in order that a neutral and detached judicial officer may determine the existence or nonexistence of such material." Bramlett argues on appeal that the district court's failure to conduct the requested
 
 in camera
 
 inspection of the District Attorney's file violated the Oklahoma Discovery Code and his right to due process under the United States Constitution.
 

 ¶ 27 Bramlett's argument centers around the "decline sheet" presumably showing the reason(s) why the State declined to file charges against him for the assault against Michelle Spence reported in November of 2013. He speculates that this document could have been exculpatory if it showed that he was not charged because there was insufficient evidence to establish probable cause to believe that he committed that crime. It would, Bramlett speculated, refute the State's evidence that he was Michelle Spence's boyfriend at the time of the 2013 assault and the State's evidence of his alleged prior bad act. While defense counsel raised this issue at the pretrial hearing on the State's notice of intent to introduce evidence of other bad acts, he did not object to this alleged discovery violation at trial. Accordingly, our review on appeal is for plain error.
 
 See
 

 Hogan
 
 ,
 
 2006 OK CR 19
 
 , ¶ 38,
 
 139 P.3d at 923
 
 .
 

 ¶ 28 The Oklahoma Criminal Discovery Code provides that, "[t]he discovery order shall not include discovery of legal work product of either attorney which is deemed to include legal research or those portions of records, correspondence, reports, or memoranda which are only the opinions, theories, or conclusions of the attorney or the attorney's legal staff." 22 O.S.2011, § 2002(E)(3). The prosecutor's "decline sheet" would be considered work product and not subject to discovery under section 2002(E)(3). That a document is not discoverable under state law, however, does not foreclose the possibility that the State was nonetheless required to disclose it; due process requires the State to disclose exculpatory and impeachment evidence favorable to an accused.
 
 Brady v. Maryland
 
 ,
 
 373 U.S. 83
 
 ,
 
 83 S.Ct. 1194
 
 ,
 
 10 L.Ed.2d 215
 
 (1963).
 
 See also
 

 Nauni v. State
 
 ,
 
 1983 OK CR 136
 
 , ¶ 31,
 
 670 P.2d 126
 
 , 133,
 
 citing
 

 Castleberry v. Crisp
 
 ,
 
 414 F.Supp. 945
 
 (N.D. Okl. 1976) ("While the work-product privilege may not be applied in derogation of a criminal defendant's constitutional rights to disclosure of evidence favorable to the defendant, ... such evidence must be material to either guilt or to punishment before it is discoverable."). This Court has held that, "[t]o establish a
 
 Brady
 
 violation, a defendant must show that the prosecution suppressed evidence that was favorable to him or exculpatory, and that the evidence was material."
 
 Jones v. State
 
 ,
 
 2006 OK CR 5
 
 , ¶ 51,
 
 128 P.3d 521
 
 , 541. "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."
 
 United States v. Bagley
 
 ,
 
 473 U.S. 667
 
 , 682,
 
 105 S.Ct. 3375
 
 , 3383,
 
 87 L.Ed.2d 481
 
 (1985). The question is whether, in the absence of the non-disclosed information, the defendant received a fair trial resulting in a verdict worthy of confidence.
 
 See
 

 Jones
 
 ,
 
 2006 OK CR 5
 
 , ¶ 51,
 
 128 P.3d at 541
 
 .
 
 See also
 

 Wright v. State
 
 ,
 
 2001 OK CR 19
 
 , ¶ 38,
 
 30 P.3d 1148
 
 , 1157. There is no indication from the record that there was a
 
 Brady
 
 violation in this case.
 

 ¶ 29 Bramlett complains that while it is clear that Spence was injured in the prior assault and that she told medical personnel that her boyfriend had injured her, he states, "we only have her sister's word that [he] was her only boyfriend at the time, or even that he was her boyfriend at all." Bramlett argues that because the "decline sheet" is not part of the record we cannot know whether or not it was truly exculpatory. He asserts that the
 mere fact that the State declined to charge him with the prior assault creates a sufficient question to either reverse and remand the case for a new trial or to remand the case for an
 
 in camera
 
 hearing. The record belies his claim. When the State filed its notice of intent to introduce evidence of other wrongs, crimes or bad acts, the prosecutor attached a copy of the police report made by the officer who spoke with Spence at the hospital when he investigated the reported assault. The officer noted in this report that Spence named Bramlett as her assailant. Defense counsel mentioned this report at the hearing on the notice of intent to introduce evidence of other bad acts and acknowledged that it was "clear that [Spence] was not cooperative." We find no error, plain or otherwise, in the trial court's denial of Bramlett's request for an
 
 in camera
 
 inspection of the District Attorney's records to look for exculpatory evidence. This proposition is without merit and relief is not required.
 

 6. Lay Testimony
 

 ¶ 30 Tulsa Police Department Corporal Nathan Schilling testified at trial about where Spence's and Bramlett's cell phones were physically located shortly before, during, and shortly after the crime was alleged to have happened. His testimony was based upon his review of cell phone data retrieved from both Spence's and Bramlett's cell phones as well as geographic location data from Google and Facebook. The trial court ruled prior to trial that Corporal Schilling could not give this testimony as an expert but could testify as a lay witness. Bramlett argues on appeal that Corporal Schilling's testimony was not lay testimony and the trial court abused its discretion in permitting Schilling to give expert testimony without first performing the 'gatekeeping' function of determining that Schilling was qualified as an expert and that his opinions were reliable. The district court's rulings on the admissibility of evidence are reviewed for an abuse of discretion.
 
 See
 

 Ashton v. State
 
 ,
 
 2017 OK CR 15
 
 , ¶ 26,
 
 400 P.3d 887
 
 , 895. The record reveals, however, that in this case Bramlett waived appellate review of this issue for all but plain error by failing to object at trial.
 
 See
 

 Williams v. State
 
 ,
 
 2008 OK CR 19
 
 , ¶ 80,
 
 188 P.3d 208
 
 , 225. Again, to be entitled to relief for plain error, Bramlett must show: "(1) the existence of an actual error (i.e., deviation from a legal rule); (2) that the error is plain or obvious; and (3) that the error affected his substantial rights, meaning the error affected the outcome of the proceeding."
 
 Hogan
 
 ,
 
 2006 OK CR 19
 
 , ¶ 38,
 
 139 P.3d at 923
 
 .
 

 ¶ 31 Title 12 O.S.2013, § 2702 provides that under certain conditions, "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise...." A lay witness, on the other hand, may testify in the form of opinions or inferences provided the opinions or inferences are rationally based on the witness' perception, are helpful to a clear understanding of the witness' testimony or the determination of a fact in issue and are not based on scientific, technical or other specialized knowledge. 12 O.S.2011, § 2701.
 

 ¶ 32 Prior to trial defense counsel filed a bench brief regarding the admissibility of cell phone tower records and geographic location data from cell phones in which the defense objected to the propriety of using lay witnesses as experts arguing, "[t]he defense would object to any testimony or evidence from any police lay witnesses explaining the scientific, technical or specialized knowledge involved in the cellular tower data or geo location data as this would exceed the appropriate limits established by 12 O.S. § 2702 and the case law construing it." The trial court treated the brief as a motion in limine and after an initial hearing the court determined it was necessary to hold a
 
 Daubert
 

 [5]
 
 hearing to assess Corporal Schilling's training and the extent of his knowledge about this information.
 

 ¶ 33 During the
 
 Daubert
 
 hearing Corporal Schilling testified that he collected records from Spence's and Bramlett's cell phone carriers and from Facebook and Google and from this information he was able to plot a general timeline of where the phones were located. Corporal Schilling agreed that he was not reaching a scientific conclusion but rather was drawing together facts to reach an inference. Defense counsel's cross examination of Corporal Schilling was primarily focused on discrediting him as an expert and at the conclusion of the hearing the prosecutor argued that although Corporal Schilling had some training, the better part of his testimony was more properly characterized as lay witness opinion testimony. Defense counsel agreed stating, "what [Corporal Schilling] wants to testify to is to his opinion, his lay opinion, based on some specialized knowledge that he has, which is outside of
 
 Daubert
 
 ."
 

 ¶ 34 At the conclusion of the
 
 Daubert
 
 hearing, the trial court noted that they were not dealing with a new and novel science but rather the hearing was about what the parameters of the testimony should be. The district judge stated, "[Corporal Schilling]'s kind of a lay witness talking about what these data points mean to him after some specialized training. ... [T]here's a line somewhere where it would cross into the expert arena, which would not be proper." The judge ruled that Corporal Schilling's testimony was that of a lay witness and he would be allowed to testify about Spence's and Bramlett's phones initiating or having contact with Facebook or Google maps but he could not testify about who was using the phones. Defense counsel, who had specifically objected to the court or the prosecutor calling Corporal Schilling an expert, stated that she did not object to this ruling. To the extent that defense counsel was in agreement with the district court's pretrial ruling and then did not object to Corporal Schilling's testimony at trial, the claim is waived as invited error.
 
 See
 

 Cuesta-Rodriguez v. State
 
 ,
 
 2010 OK CR 23
 
 , ¶ 73,
 
 241 P.3d 214
 
 , 237.
 
 See also
 

 Ellis v. State,
 

 1992 OK CR 45
 
 , ¶ 28,
 
 867 P.2d 1289
 
 , 1299 (opinion on rehearing)(holding that error invited by defense counsel cannot serve as basis for reversal because defendant cannot invite error and then seek to profit from it);
 
 Pierce v. State,
 

 1990 OK CR 7
 
 , ¶ 10,
 
 786 P.2d 1255
 
 , 1259 ("[w]e have often recognized the well established principal that a defendant may not complain of error which he has invited, and that reversal cannot be predicated on such error").
 

 ¶ 35 Nevertheless, the claim also fails on the merits. We agree with the district court that Corporal Schilling's testimony did not express an expert opinion based upon novel technical, or specialized knowledge. Rather, he reviewed records of cell phone data retrieved from both Spence's and Bramlett's cell phones as well as geographic location data from Google and Facebook and gave proper lay opinion testimony about where the cell phones were located at different times based upon his training and experience as a police officer. The testimony was admissible under 12 O.S.2011, § 2701. The trial court's ruling was not error, plain or otherwise.
 

 7. Prosecutorial Misconduct
 

 ¶ 36 In his final proposition of error Bramlett seeks relief based upon claims of prosecutorial misconduct occurring during closing argument.
 
 [6]
 
 One instance of alleged misconduct was met with contemporaneous objection at trial and the other was not. The alleged misconduct not objected to at trial is reviewed for plain error only.
 
 Barnes v. State
 
 ,
 
 2017 OK CR 26
 
 , ¶ 6,
 
 408 P.3d 209
 
 , 213. Again, "[p]lain error is an actual error, that is plain or obvious, and that affects a defendant's substantial rights, affecting the outcome of the trial."
 

 Mitchell v. State
 
 ,
 
 2016 OK CR 21
 
 , ¶ 24,
 
 387 P.3d 934
 
 , 943. Relief is only granted where the prosecutor's flagrant misconduct so infected the defendant's trial that it was rendered fundamentally unfair.
 
 See
 

 Jones v. State
 
 ,
 
 2011 OK CR 13
 
 , ¶ 3,
 
 253 P.3d 997
 
 , 998. It is the rare instance when a prosecutor's misconduct during closing argument will be found to be so egregiously detrimental to a defendant's right to a fair trial that reversal is required.
 
 Pryor v. State
 
 ,
 
 2011 OK CR 18
 
 , ¶ 4,
 
 254 P.3d 721
 
 , 722.
 

 ¶ 37 Bramlett argues that the prosecutors twice misstated the consequences of a sentence of life imprisonment with the possibility of parole when they told the jury that if Bramlett was sentenced to life with the possibility of parole he would be paroled after serving 85% of forty-five years. Bramlett is, as the State concedes, correct. This was a misstatement of the law because Bramlett would be required to serve 85% of a life sentence before he would be "eligible for consideration for parole." 21 O.S.Supp.2014, § 13.1. There was no guarantee that he would be paroled.
 

 ¶ 38 On at least two occasions this Court has condemned as improper the very argument advanced by the prosecution here.
 
 See
 

 Florez v. State
 
 ,
 
 2010 OK CR 21
 
 ,
 
 239 P.3d 156
 
 ;
 
 Taylor v. State
 
 ,
 
 2011 OK CR 8
 
 ,
 
 248 P.3d 362
 
 . In
 
 Florez
 
 the prosecutor told the jury in closing argument:
 

 And you're also given an instruction that tells you he will only do 85 percent of what you give him. He's not going to do all of it. So you've got to take that into consideration. He's only going to do 85 percent of it.
 

 Florez
 
 ,
 
 2010 OK CR 21
 
 , ¶ 5,
 
 239 P.3d at 158
 
 . This Court found that the prosecutor's argument was, "a misleading misstatement of law which constitutes a substantial violation of Florez's constitutional and statutory right to have his jury correctly instructed regarding sentencing."
 
 Id
 
 .,
 
 2010 OK CR 21
 
 , ¶ 6,
 
 239 P.3d at 158
 
 . A year later, in
 
 Taylor
 
 , where the prosecutor made comments virtually identical to those condemned in
 
 Florez
 
 , we cautioned:
 

 Prosecutors must be careful that their statements about the 85% Rule do not mischaracterize the statute as some form of automatic release; the statute is a limitation on a prisoner's legal eligibility 'for consideration for parole' and does not guarantee or require
 
 any
 
 form of early release.
 

 Taylor
 
 ,
 
 2011 OK CR 8
 
 , ¶ 52,
 
 248 P.3d at 378
 
 (emphasis in original).
 

 ¶ 39 Despite the error, this Court declined to grant relief in either
 
 Florez
 
 or
 
 Taylor
 
 . The Court found in
 
 Florez
 
 that the defendant failed to show prejudice; the range of punishment options was wide and the jury sentenced Florez far below the maximum allowed and even below the term of years encouraged by the prosecutor.
 
 Florez
 
 ,
 
 2010 OK CR 21
 
 , ¶ 9,
 
 239 P.3d at 159
 
 . In
 
 Taylor
 
 , the Court noted that the prosecutor's improper argument mischaracterizing the 85% Rule was mitigated by other statements made by the prosecutor directing the jurors to the instructions telling them that the instructions set forth the ground rules explaining how the 85% Rule works.
 
 Taylor
 
 ,
 
 2011 OK CR 8
 
 , ¶ 53,
 
 248 P.3d at 378
 
 . There were no such mitigating factors here.
 

 ¶ 40 During the first closing argument the prosecutor told the jury that if Bramlett was sentenced to life with the possibility of parole he would be required to serve 85% of forty-five years, "which means in 38 1/3rd years, should he make it to that age, he will be paroled." Defense counsel objected and the objection was overruled. Then again, in the State's final closing, the prosecutor stated, "If you give [Bramlett] life, he will only serve 85 percent of the crime. He will only serve those 38 years, while Michelle is gone forever." As in
 
 Florez
 
 and
 
 Taylor
 
 , the prosecutors' argument flatly misstated the law's intent and effect and encouraged jurors to misapply the law in considering an appropriate punishment. Unlike in
 
 Florez
 
 , however, the jury did not sentence Bramlett below the statutory maximum but rather sentenced him to the maximum punishment possible which was requested by the prosecutor, i.e., life imprisonment without the possibility of parole. Unlike in
 
 Taylor
 
 , the prosecutors here did nothing to mitigate the effects of the erroneous statements. While the prosecutor in
 
 Taylor
 
 directed the jury's attention to the
 written jury instructions and told them that the instructions properly informed them about the effect of the 85% Rule, the prosecutor in the present case mentioned the instructions and then misstated the law regarding the 85% Rule inferring, misleadingly, that the instructions mirrored his argument. While defense counsel admirably attempted to correct the misstatement and argued the appropriate application of the law, the potential impact of her argument was weakened both by the trial court's failure to sustain her objection to the prosecutor's initial misstatement of the law and by the prosecutor's second misstatement which, unfortunately, was the last argument the jurors heard before they were excused to deliberate.
 

 ¶ 41 As the United States Supreme Court has admonished, a prosecutor "is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor-indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones."
 
 Berger v. United States
 
 ,
 
 295 U.S. 78
 
 , 88,
 
 55 S.Ct. 629
 
 , 633,
 
 79 L.Ed. 1314
 
 (1935). This Court noted in
 
 Florez
 
 that in another case, like misstatements of law would require reversal for resentencing or sentence modification.
 
 Florez
 
 ,
 
 2010 OK CR 21
 
 , ¶ 9,
 
 239 P.3d at 159
 
 . This is that case.
 

 ¶ 42 The trial court abused its discretion in overruling defense counsel's objection to the prosecutor's first misstatement of the 85% Rule. The second misstatement of law, not met with objection, was plain error; it was actual error, plain or obvious, and affected Bramlett's substantial rights. Under the circumstances of this case, neither error was harmless. The prosecutor's flagrant misconduct so infected the sentencing stage of Bramlett's trial that it was rendered fundamentally unfair. Bramlett's sentence must be vacated and the case remanded to the trial court for resentencing.
 

 DECISION
 

 ¶ 43 The Judgment of the District Court is
 
 AFFIRMED
 
 , but the Sentence is
 
 VACATED
 
 and the cause
 
 REMANDED
 
 to the District Court for
 
 RESENTENCING
 
 . Pursuant to Rule 3.15,
 
 Rules of the Oklahoma Court of Criminal Appeals
 
 , Title 22, Ch. 18, App. (2018), the
 
 MANDATE
 
 is
 
 ORDERED
 
 issued upon delivery and filing of this decision.
 

 LUMPKIN, P.J.: Concur
 

 LEWIS, V.P.J.: Concur in Part and Dissent in Part
 

 HUDSON, J.: Concur
 

 KUEHN, J.: Concur
 

 The distance between Bramlett's and Spence's residences was approximately two miles. Bramlett was Spence's ex-boyfriend and although the two were not currently dating, they saw each other frequently.
 

 Bramlett does not argue that his statement to the Tulsa detectives was not knowingly and voluntarily made. Such argument would not be supported by the record; prior to speaking with the detectives he was properly advised of his rights under
 
 Miranda v. Arizona
 
 ,
 
 384 U.S. 436
 
 , 469-70,
 
 86 S.Ct. 1602
 
 , 1625-26,
 
 16 L.Ed.2d 694
 
 (1966) and he agreed to the interview voluntarily with full knowledge and understanding of his rights. The Fourteenth Amendment safeguards against badgered confessions is the requirement that all statements introduced against a criminal defendant, regardless of whether they are in custody or have secured counsel, be voluntarily made.
 
 See
 

 Malloy v. Hogan
 
 ,
 
 378 U.S. 1
 
 , 8,
 
 84 S.Ct. 1489
 
 , 1493-94,
 
 12 L.Ed.2d 653
 
 (1964) ;
 
 Young v. State
 
 ,
 
 1983 OK CR 126
 
 , ¶¶ 10-11,
 
 670 P.2d 591
 
 , 594. These requirements were satisfied here.
 

 Notably, the record shows that Bramlett waived extradition from Illinois to Oklahoma. In this waiver of extradition he acknowledged that he had been advised of several rights including his right to contest the legality of his arrest and he "waived all rights to contest extradition ... without extradition proceedings or the issuance and service of a Warrant of Extradition by the Governor of Illinois." Thus, Bramlett specifically waived his right to contest the legality of his arrest.
 

 It is of no consequence that in response to the prosecutor's question, "Who would [Michelle] say was her boyfriend?" Stephanie Spence answered, "Renese Bramlett." While this question anticipated a response relying upon hearsay, Stephanie Spence's other testimony that Bramlett was her sister's boyfriend did not rely on hearsay.
 

 Daubert v. Merrell Dow Pharmaceuticals, Inc.
 
 ,
 
 509 U.S. 579
 
 ,
 
 113 S.Ct. 2786
 
 ,
 
 125 L.Ed.2d 469
 
 (1993), and
 
 Kumho Tire Co., Ltd. v. Carmichael
 
 ,
 
 526 U.S. 137
 
 ,
 
 119 S.Ct. 1167
 
 ,
 
 143 L.Ed.2d 238
 
 (1999), govern admissibility of scientific and other technical or specialized evidence.
 
 Day v. State
 
 ,
 
 2013 OK CR 8
 
 , ¶ 4,
 
 303 P.3d 291
 
 , 295. In Oklahoma criminal cases,
 
 Daubert
 
 inquiry is explicitly limited to novel scientific evidence; if the testimony does not concern novel technical, or specialized knowledge, the trial court need not hold a
 
 Daubert
 
 hearing.
 
 Day
 
 ,
 
 2013 OK CR 8
 
 , ¶ 5,
 
 303 P.3d at 295
 
 . Schilling's testimony was not about novel scientific evidence, and although he received a
 
 Daubert
 
 hearing, none was necessary.
 

 Because we find a portion of Bramlett's argument to merit relief, we address in this proposition only the claim upon which the grant of relief is based.