TAFOLLA v. STATE



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:TAFOLLA v. STATE

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 TAFOLLA v. STATE
2019 OK CR 15
446 P.3d 1248
Case Number: F-2017-802
Decided: 07/18/2019
JESTIN TAFOLLA, Appellant v. THE STATE OF OKLAHOMA, Appellee.
Cite as: 2019 OK CR 15, 446 P.3d 1248

 

 

O P I N I O N

ROWLAND, JUDGE:

¶1 Appellant Jestin Tafolla appeals his Judgment and Sentence from the District Court of Tulsa County, Case No. CF-2016-2204, for Assault and Battery with a Dangerous Weapon, After Former Conviction of Two or More Felonies (Count 1), in violation of 21 O.S.2011, § 645, and Carrying a Weapon Unlawfully, a misdemeanor (Count 2), in violation of 21 O.S.Supp.2015, § 1272. The Honorable William D. LaFortune, District Judge, presided over Tafolla's jury trial and sentenced him, in accordance with the jury's verdict, to life imprisonment on Count 1 and thirty days in the county jail on Count 2. The sentences were ordered to be served concurrently. Tafolla appeals raising the following issues:

(1) whether the admission of evidence of his gang affiliation violated his due process right to a fair trial;

(2) whether evidence of his gang affiliation was "aggravating" evidence not permissible under Oklahoma law;

(3) whether the trial court erred in allowing evidence of his gang affiliation in violation of the First Amendment Freedom of Association;

(4) whether the admission of his statement that he was a member of the Aryan Brotherhood was improper and denied him his due process right to a fair trial;

(5) whether admission of the victim's out of court statements violated his constitutional right to confrontation;

(6) whether the admission of evidence of underlying facts and probationary sentences imposed in his prior felony convictions deprived him of his due process right to a fair trial;

(7) whether prosecutorial misconduct deprived him of his due process right to a fair trial;

(8) whether instructional error requires relief;

(9) whether his convictions for both assault and battery with a dangerous weapon and carrying a weapon unlawfully violated the constitutional prohibition against double jeopardy and the state prohibition against double punishment;

(10) whether error occurred when the State charged him with the general crime instead of a more specific "hate" crime;

(11) whether he was denied effective assistance of counsel; and,

(12) whether an accumulation of error deprived him of a fair trial.

¶2 We find relief is not required and affirm the Judgment and Sentence of the district court.

FACTS

¶3 On the afternoon of April 5, 2016, Tulsa Police Detectives James Dawson and Korey Scott, both with the Organized Gang Unit, were driving in an unmarked car back to the police station at the end of their patrol shift. Around 11th Street and Highway 169 they saw a white male, Jestin Tafolla, straddling a black male who was on his back on the sidewalk. Tafolla was hitting the victim repeatedly in the face and the detectives could see the victim's head bouncing off the sidewalk with each blow. The detectives activated the lights on their car and drove up to the two men. When Tafolla saw the detectives approach, he stood up, pulled brass knuckles off of his hand, and threw them into the grass ten to fifteen feet away. The officers separated and handcuffed both men as they tried to figure out what had happened.

¶4 The victim told the detectives that he had been driving on the highway and had been cut off. This upset him and he followed the car that cut him off. When the car driven by Tafolla pulled over, both men got out of their vehicles and the two engaged in a heated argument. After they exchanged words they walked back to their cars. As the victim walked toward his car, the occupant of Tafolla's car, Lara Maloy, yelled at him and called him a "n----r."[1] The victim lost his cool; he grabbed a QuikTrip cup half filled with soda from his vehicle and threw the soda toward Tafolla's vehicle at Maloy. As the victim was verbally confronting Maloy, Tafolla sucker punched him in the back of the head. The victim did not remember much after the initial blow. His head was bleeding profusely; he had lacerations in both the front and back of his head. When he spoke with the detectives he was disoriented, dazed, upset, and confused.

¶5 When Detective Dawson approached Tafolla he noticed that Tafolla was heavily tattooed. Dawson thought that the tattoos might indicate a gang affiliation and because he noted a cloverleaf tattoo he asked Tafolla if he was a member of the Irish Mob. Taffolla was angered by the question and pointed out his swastika tattoo; he told Dawson that he was UAB (Universal Aryan Brotherhood). The brass knuckles retrieved from the grass had wolf heads across the knuckle with sharp pointed ears on the wolves. Dawson testified at trial that members of UAB refer to themselves as the "wolf pack." Dawson noted that in addition to significant lacerations on his face, the victim had a row of lacerations across the back of his head in the shape of a wolf's head; the head and sharp ears from the brass knuckles were cut into the back of his head.

¶6 When Tafolla and Maloy told the detectives what had happened, their accounts of how the altercation began were similar to the victim's but their stories of how it escalated at the end were different. Lara testified at trial that after her husband and the victim "had words" in the parking lot they shook hands and went back to their own cars. She testified that the victim backed his car up and started calling her names. She said that he stopped his car, grabbed something from the car and started walking toward her. At this point Tafolla intervened. The victim threw a cup at Tafolla's face and started hitting and punching him. She testified that Tafolla only hit the victim because he was attacked by the victim first. She denied calling the victim a racial epithet.

¶7 Tafolla testified at trial. He said that after he and the victim got within a few feet of each other the victim's demeanor changed; he became less aggressive possibly because he saw Tafolla's visible tattoos. The victim "went from very aggressive to second guessing his behavior." Tafolla said that after their heated exchange of words, he and the victim calmed down and shook hands. When he returned to his car, Lara was standing outside the vehicle. He told her to get back in the car and as he and Lara were bickering back and forth the victim drove by and said, "yeah, get your bitch cuz." Tafolla testified that Lara started yelling at the victim who stopped, got out of his car, reached back into his car and started grabbing for something. Tafolla grabbed his brass knuckles. The victim threw his drink on Tafolla and punched him in the mouth. The two began to fight and were engaged in mutual combat. He testified that they were on their feet "engaging in hand-to-hand combat." Tafolla denied ever hitting the victim from behind and he surmised that the injuries on the back of the victim's head occurred when the victim ducked his head during the fight. Tafolla testified that when the victim fell to the ground he got right back up again. Tafolla denied sitting on the victim and beating his face. He testified that the detectives' testimony to the contrary was wrong.

1.

¶8 Prior to trial the prosecution gave notice that it intended to introduce evidence of other crimes or bad acts at trial. This included evidence that Tafolla was a member of the Universal Aryan Brotherhood (UAB) -- a white supremacist prison gang. Tafolla argues that the evidence of his gang affiliation was inadmissible.

¶9 The State asserted below that evidence of Tafolla's involvement in the UAB gang was admissible to show motive, common scheme, design, or purpose, identity, and bias. Despite the extensive pretrial discussion and argument, the gang related evidence about which Tafolla complains in this proposition was not met with objection when it was introduced at trial. Accordingly, we review the admission of this evidence for plain error only. See Lowery v. State, 2008 OK CR 26, ¶ 9, 192 P.3d 1264, 1268 (where defense counsel vigorously challenged other crimes evidence during the in-trial hearing but failed to object at the time the evidence was actually offered at trial review was for plain error). To be entitled to relief for plain error, an appellant must show: "(1) the existence of an actual error (i.e., deviation from a legal rule); (2) that the error is plain or obvious; and (3) that the error affected his substantial rights, meaning the error affected the outcome of the proceeding." Hogan v. State, 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923. "This Court will only correct plain error if the error seriously affects the fairness, integrity or public reputation of the judicial proceedings or otherwise represents a miscarriage of justice." Stewart v. State, 2016 OK CR 9, ¶ 25, 372 P.3d 508, 514.

¶10 In Dawson v. Delaware, 503 U.S. 159, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992), the Supreme Court held that evidence introduced in a capital sentencing proceeding that the defendant belonged to the Aryan Brotherhood was constitutional error where such evidence had "no relevance to the issues being decided in the proceeding." Id. 503 U.S. at 160, 112 S.Ct. at 1095. The Supreme Court found in Dawson that the evidence was not inadmissible per se, but rather was irrelevant because the victim and defendant were both white; there was no link between gang membership and the crime -- the evidence proved nothing more than the defendant's "abstract beliefs." Id. 503 U.S. at 165--67, 112 S.Ct. at 1098. See also Martinez v. State, 2016 OK CR 3, ¶ 61, 371 P.3d 1100, 1115; Torres v. State, 1998 OK CR 40, ¶¶ 66-68, 962 P.2d 3, 22. While acknowledging Dawson's holding that evidence of gang affiliation may be irrelevant under such circumstances in a second stage proceeding, this Court has found that it may be "relevant to character issues and to establish a plan for the crime in the first stage of the proceeding." Wood v. State, 1998 OK CR 19, ¶ 36, 959 P.2d 1, 10-11.

¶11 Although evidence of other crimes or bad acts is not admissible to prove the character of a person in order to show action in conformity therewith, Oklahoma law specifically provides that evidence that a defendant has committed "other crimes" or "bad acts" may be admissible at trial to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. 12 O.S.2011, § 2404(B). This Court has held that before evidence that a defendant has committed another crime or bad act may be admissible, the evidence:

(1) must be probative of a disputed issue in the case being tried; (2) that there must be a "visible connection" between the charged crime(s) and the evidence sought to be introduced; (3) that the evidence of the other crime(s) must be necessary to support the State's burden of proof in the case being tried; (4) that the evidence of the other crime(s) sought to be introduced must be clear and convincing; and (5) that the probative value of the other crime(s) evidence must outweigh any unfair prejudice to the defendant resulting from its introduction.

Miller v. State, 2013 OK CR 11, ¶ 89, 313 P.3d 934, 966. Additionally, the trial court must issue limiting instructions. Welch v. State, 2000 OK CR 8, ¶ 8, 2 P.3d 356, 365.

¶12 In the present case, evidence that Tafolla was a member of the UAB and evidence about the UAB gang was relevant and admissible. There was no error, plain or otherwise, in the admission of this evidence. The claim is without merit and is denied.

2.

¶13 Tafolla asserts that the evidence of his affiliation with the UAB was not relevant to guilt or innocence but, rather, was offered as an aggravating circumstance to encourage the jury to impose a harsh sentence. His argument is not persuasive. The evidence of other bad acts was relevant evidence, its probative value was not outweighed by the danger of unfair prejudice, and it was not simply offered as an aggravating circumstance. Tafolla's argument is rejected.

3.

¶14 The United States Supreme Court has recognized that the First Amendment to the United States Constitution encompasses a right to expressive association which affords "protection to collective effort on behalf of shared goals[;]" i.e., "[the] right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." Roberts v. United States Jaycees, 468 U.S. 609, 622, 104 S.Ct. 3244, 3252, 82 L.Ed.2d 462 (1984). The right to associate for expressive purposes is not absolute and may be restricted to serve compelling state interests. Id. 468 U.S. at 623, 104 S.Ct. at 3252. In Dawson, the Supreme Court found that admission of evidence that the defendant was a member of the Aryan Brotherhood was prohibited by the First and Fourteenth Amendments. Dawson, 503 U.S. at 160, 112 S.Ct. at 1095. However, the Dawson Court did not find that this type of evidence was completely inadmissible, and it specifically held "that the Constitution does not erect a per se barrier to the admission of evidence concerning one's beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment." Id. 503 U.S. at 165, 112 S.Ct at 1097. The distinguishing factor in Dawson was that the Aryan Brotherhood evidence had "no bearing on the issue being tried," and was therefore irrelevant; both Dawson and the victim were white. Id. at 168, 112 S.Ct. at 1099. The gang evidence in this case was not introduced to label Tafolla as a criminal without showing that he engaged in criminal activity; it was introduced to provide a context and explanation for the criminal act he committed. Because there was evidence suggesting a nexus between Tafolla's association with the UAB and his attack upon the unarmed African American victim the evidence of his association with the white supremacist gang did not infringe upon his constitutional right of association. This claim is denied.

4.

¶15 The trial court ruled prior to trial that Tafolla's statement to Detective Dawson that he was a member UAB was part of the res gestae of the charged crime. Tafolla argues on appeal that this ruling was in error. He did not, however, object at trial when the evidence was introduced and consequently, he has waived review of this alleged error on appeal for all but plain error. We review for plain error under the test discussed in Hogan, 2006 OK CR 19, ¶ 38, 139 P.3d at 923.

¶16 Evidence is considered part of the res gestae when (1) it is so closely connected to the charged offense as to form part of the entire transaction; (2) it is necessary to give the jury a complete understanding of the crime; or (3) it is central to the chain of events. Jackson v. State, 2006 OK CR 45, ¶ 28, 146 P.3d 1149, 1160. "Res gestae are those things, events, and circumstances incidental to and surrounding a larger event that help explain it." McElmurry v. State, 2002 OK CR 40, ¶ 63, 60 P.3d 4, 22. This Court has held that evidence of gang involvement or affiliation may be admissible when it is "fundamental to understanding what happened and why it happened." Thompson v. State, 2007 OK CR 38, ¶ 34, 169 P.3d 1198, 1209.

¶17 While Tafolla argues that the assault in this case had nothing to do with his affiliation with the UAB or the tenets of that organization, the totality of the evidence suggests otherwise. Tafolla's statement about his gang affiliation was closely connected to the charged offense. It was necessary to give the jury a complete understanding of the crime and was central to the chain of events. Tafolla's statement about his UAB affiliation, viewed with evidence of his numerous tattoos of white supremacist symbols and the brass knuckles also bearing a symbol associated with white supremacists provided an alternative explanation of why the confrontation escalated from an uneventful parting to a brutal beating. Tafilla's statement was part of the res gestae and its admission was not error, plain or otherwise.

5.

¶18 The victim did not testify at preliminary hearing or trial. At trial Detective Dawson testified about what the victim told him at the scene. This included the victim's statement to Dawson that as he walked back to his car after he and Tafolla exchanged words, Tafolla's girlfriend called him a racial epithet and when he responded by throwing a cup of soda at her he was attacked from behind by Tafolla. Tafolla complains on appeal that because the victim did not testify at trial the admission of his statements to Detective Dawson violated his constitutional right to confrontation. Because Tafolla failed to raise this specific objection at trial, we review only for plain error on appeal. See Bench v. State, 2018 OK CR 31, ¶ 140, 431 P.3d 929, 966. See also Tryon v. State, 2018 OK CR 20, ¶ 38, 423 P.3d 617, 632 (where defendant objected below on state law grounds his claim on appeal of constitutional violation is reviewed for plain error only).

¶19 The Sixth Amendment to the United States Constitution requires that in all "criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him...." U.S. Const. amend. VI; Pointer v. Texas, 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965)("the Sixth Amendment's right of an accused to confront the witnesses against him is likewise a fundamental right and is made obligatory on the States by the Fourteenth Amendment"). In Crawford v. Washington, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 1365, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Sixth Amendment's right to confrontation bars the admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." While the Court in Crawford declined to set forth an exhaustive definition for the term "testimonial," it wrote that, at a minimum, the term applies to "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Id. 541 U.S. at 68, 124 S.Ct. at 1374. In Davis v. Washington, 547 U.S. 813, 822, 126 S.Ct. 2266, 2273-74, 165 L.Ed.2d 224 (2006), the Court expanded on Crawford, explaining:

Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

¶20 In Michigan v. Bryant, 562 U.S. 344, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011), the Supreme Court discussed the primary purpose test emphasizing that it requires consideration of all relevant circumstances. The Court held in Bryant that when assessing police interrogations courts must "objectively evaluat[e] the statements and actions of the parties to the encounter, in light of the circumstances in which the interrogation occurs" to determine the primary purpose of the interrogation. Id. 562 U.S. at 370, 131 S.Ct. at 1162. The Court noted that while the existence of an ongoing emergency is one factor to consider another is the formality of the situation and the interrogation. The Court cautioned, however, that "although formality suggests the absence of an emergency and therefore an increased likelihood that the purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution, informality does not necessarily indicate the presence of an emergency or the lack of testimonial intent." Id. 562 U.S. at 366, 131 S.Ct. 1160 (internal quotations and citations omitted). See also Davis, 547 U.S. at 822 n.1, 126 S.Ct. at 2274 n.1 (statements that are not the product of a formal interrogation may be testimonial). In any case, the question of whether a statement is testimonial is fact-specific; the circumstances, statements, and actions of both the declarant and the interrogator are to be considered.

¶21 In the present case, when the detectives arrived at the scene of the assault, they separated the victim and Tafolla and searched and handcuffed each of them. After it was determined that the victim did not have a weapon, his handcuffs were removed so that he could hold a t-shirt to his head wounds to apply pressure to the bleeding. The detectives called for an ambulance and while they were waiting for it to arrive Detective Dawson asked the victim what had happened. Clearly, the circumstances under which the victim was questioned cannot be characterized as formal. However, it is fair to say that the victim's statements were not made to enable the police to meet an ongoing emergency; the situation had deescalated and was no longer an emergency. A reasonable person could determine from the fact that detectives had arrived during an ongoing assault, secured the individuals involved, and asked questions to determine what had happened, that the detective's intent was to secure testimonial evidence. Despite the lack of formality, a reasonable person in the victim's position could understand that the detective's questions were investigative in nature and foresee that his response might be used in the prosecution of a crime. Thus, the statements were testimonial and absent a showing that the victim was unavailable and that Tafolla had prior opportunity to cross examine him, Detective Dawson's testimony about what the victim told him had happened violated Tafolla's Sixth Amendment right to confrontation.

¶22 Again, because Tafolla did not raise this issue below, he has waived all but plain error. Detective Dawson's testimony about what the victim told him about the assault repeated testimonial hearsay and violated Tafolla's Sixth Amendment right to confront witnesses against him and was plain error. See Miller, 2013 OK CR 11, ¶¶ 104-05, 313 P.3d at 971 (clear violation of Sixth Amendment right to confrontation was plain error). This error, however, does not necessarily require relief. Given the constitutional nature of this claim we must decide whether it was harmless beyond a reasonable doubt. See Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) (holding that "before a federal constitutional error can be held harmless, the [reviewing] court must be able to declare a belief that it was harmless beyond a reasonable doubt"). See Miller, 2013 OK CR 11, ¶ 106, 313 P.3d at 971-72 (recognizing that violations of the Confrontation Clause are subject to harmless error analysis); Cuesta-Rodriguez v. State, 2010 OK CR 23, ¶ 40, 241 P.3d 214, 230 (applying harmless error analysis). In making this determination, we focus upon the specific circumstances of Tafolla's case.

¶23 When the detectives arrived on the scene they saw Tafolla standing over the victim and beating him on the sidewalk. Marks left on the back of the victim's head by the brass knuckles support the finding that the victim was assaulted by Tafolla from behind. Given the properly admitted evidence, we find that the violation of the Confrontation Clause contributed neither to Tafolla's conviction nor to the punishment assessed; it was harmless beyond a reasonable doubt. This claim is denied.

6.

¶24 Tafolla complains that error occurred when the prosecutor asked him questions on cross-examination which elicited evidence about the details of his prior convictions including that his victims were minorities. He also complains that the prosecutor improperly commented on the fact that he had previously received probationary sentences. Tafolla acknowledges that the questioning complained of was not met with objection and is therefore subject to review for plain error only. Again, under the plain error test, the burden is on Tafolla to show the existence of an actual, obvious error that affected his substantial rights. Hogan, 2006 OK CR 19, ¶ 38, 139 P.3d at 923.

¶25 The prosecution's theory was that Tafolla's brutal attack on an unarmed black man was motivated, at least in part, by Tafolla's membership in a white supremacist prison gang. He testified at trial, claimed self-defense, and denied that the victim's race played any part in the attack. It was therefore entirely proper for the prosecution to cross-examine him about two prior attacks which also targeted minorities. The testimony at issue was admissible as it was relevant and material to impeach Tafolla's credibility as a witness, to help prove the State's theory of the case, and to rebut his proffered defense. Furthermore, the probative value of this relevant evidence was not outweighed by the danger of unfair prejudice. 12 O.S.2011, § 2403. The introduction of this evidence was not error, plain or otherwise.

¶26 Tafolla also complains that error occurred when the jury learned that he had received suspended sentences on prior convictions. Recently, in Terrell v. State, 2018 OK CR 22, ¶ 6, 425 P.3d 399, 401 (internal citations omitted), this Court held:

Jurors are free to consider the relevant proof of a prior conviction including any evidence that a defendant previously received probation, suspension, or deferral of a sentence and any acceleration or revocation of such a sentence. The receipt of a probationary term may be viewed as supporting both greater and lesser punishment depending on the facts of the case.

¶27 The Court added that the use of this evidence is still limited by 12 O.S.2011, § 2403 which provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Id. 2018 OK CR 22, ¶ 8, 425 P.3d at 401. We find that the evidence at issue in the present case was relevant and that its probative value was not outweighed by the danger of unfair prejudice. As there was no error, plain or otherwise, relief is not required.

7.

¶28 Tafolla complains prosecutorial misconduct deprived him of his right to a fair trial. None of the comments at issue were met with objection at trial. Accordingly, we review the alleged misconduct for plain error only. Harney v. State, 2011 OK CR 10, ¶ 23, 256 P.3d 1002, 1007. We review his claim under the analysis set forth in Hogan, 2006 OK CR 19, ¶ 38, 139 P.3d at 923. Again, this Court will only correct plain error if the error seriously affects the fairness, integrity or public reputation of the judicial proceedings or otherwise represents a miscarriage of justice. Id. "[W]e evaluate the alleged misconduct within the context of the entire trial, considering not only the propriety of the prosecutor's actions, but also the strength of the evidence against the defendant and the corresponding arguments of defense counsel." Hanson v. State, 2009 OK CR 13, ¶ 18, 206 P.3d 1020, 1028. Both sides have wide latitude to discuss the evidence and reasonable inferences therefrom. Harmon v. State, 2011 OK CR 6, ¶ 81, 248 P.3d 918, 943. Relief is only granted where the prosecutor's flagrant misconduct so infected the defendant's trial that it was rendered fundamentally unfair. Jones v. State, 2011 OK CR 13, ¶ 3, 253 P.3d 997, 998. It is the rare instance when a prosecutor's misconduct during closing argument will be found so egregiously detrimental to a defendant's right to a fair trial that reversal is required. See Pryor v. State, 2011 OK CR 18, ¶ 4, 254 P.3d 721, 722.

¶29 It is first argued that the prosecutor improperly invoked societal alarm by asking jurors to protect others from similar conduct by the defendant. "The prohibited 'societal alarm' argument is one that mentions crimes committed by other persons and not attributable to the defendant on trial such as arguments that the crime rate is increasing." McElmurry, 2002 OK CR 40, ¶ 151, 60 P.3d at 34. "The 'societal alarm' argument is therefore irrelevant to the guilt or punishment of the defendant on trial except that it implies that the jury should 'make an example' out of the defendant on trial to deter other potential criminals." Id. The argument at issue here did not appeal to societal alarm and was not error, plain or otherwise.

¶30 Tafolla also complains that the prosecutors improperly stated their personal opinions about his guilt and the appropriate punishment. It is improper for a prosecutor to express his personal opinion of the guilt of the accused. Bryson v. State, 1994 OK CR 32, ¶ 45, 876 P.2d 240, 257; McCarty v. State, 1988 OK CR 271, ¶ 13, 765 P.2d 1215, 1220. However, a prosecuting attorney may state his opinion as to the defendant's guilt when it is based on the evidence in the case, and where the evidence detailed reasonably tends to support such conclusions. See Mayes v. State, 1994 OK CR 44, ¶ 160, 887 P.2d 1288, 1321. Here, taken in context, the prosecutors did not improperly state their personal opinion of guilt, but permissibly argued that the evidence supported a finding of guilt. See Williams v. State, 2008 OK CR 19, ¶¶ 106-107, 188 P.3d 208, 228. Furthermore, the prosecutor's request that the jury punish Tafolla severely based upon the facts of the case was not inappropriate. See Terrell, 2018 OK CR 22, ¶ 7, 425 P.3d at 401.

¶31 Tafolla also complains that the prosecutor improperly attempted to garner sympathy for the victim. The comments at issue were based upon the evidence and certainly, if bordering upon impropriety, did not rise to the level of plain error.

¶32 Next, Tafolla complains that the prosecutor made improper remarks regarding parole. These comments were addressed above in Proposition Six where we found that there was no error.

¶33 Tafolla argues that the prosecutor engaged in rampant speculation and improperly and repeatedly introduced facts not in evidence. This questioning was proper impeachment under 12 O.S.2011, § 2613(A). The prosecutor's questions were not improper nor were his comments on the witness's responses in closing.

¶34 Finally, Tafolla complains that portions of the prosecutor's argument were improper speculation and that the prosecutor engaged in improper name-calling. Prosecutors are allowed to comment upon and draw logical inferences from the evidence. See Bench, 2018 OK CR 31, ¶ 137, 431 P.3d at 966. While the prosecutor should have refrained from name-calling, the argument at issue was largely proper and certainly not plain error. This claim is denied.

8.

¶35 The trial court instructed the jury that "[i]f a person is sentenced to life imprisonment, the calculation of eligibility for parole is based upon a term of forty-five (45) years." Tafolla did not object below but argues on appeal that this instruction was improper because it advised the jury that he would be eligible for parole. Because Tafolla did not object to the instruction at trial we review for plain error only under the analysis set forth in Hogan, 2006 OK CR 19, ¶ 38, 139 P.3d at 923.

¶36 As Tafolla correctly asserts, the crime of assault and battery with a dangerous weapon is not an enumerated crime under section 13.1 and accordingly, an instruction on the 85% rule was not warranted. Additionally, the instruction given was not the uniform instruction but rather, was a poorly drafted substitute. Nonetheless, Tafolla has failed to show that the instruction given constituted plain error. This proposition warrants no relief.

9.

¶37 Tafolla argues that his convictions for both carrying a weapon unlawfully and assault and battery with a dangerous weapon violate the statutory prohibition against multiple punishments for a single criminal act under 21 O.S.2011, § 11 and the protections against double jeopardy found in the Oklahoma Constitution and the United States Constitution. Okla. Const. art. II, Section 21; U.S. Const. amends. V, XIV. Defense counsel failed to object on these grounds below, waiving all but plain error. Head v. State, 2006 OK CR 44, ¶ 9, 146 P.3d 1141, 1144.

¶38 Contrary to Tafolla's argument that carrying a weapon unlawfully and assault and battery with a dangerous weapon were a single criminal act, we find that these were separate and distinct offenses committed during a continuing course of conduct. Conviction and punishment for these crimes does not offend section 11. See Davis v. State, 1999 OK CR 48, ¶¶ 12-13, 993 P.2d 124, 126-27. Furthermore, because each of these crimes requires proof of one or more elements that the other crime does not, Tafolla was not punished twice for the same offense in violation of double jeopardy. Id. 1999 OK CR 48, ¶ 4, 993 P.2d at 125; Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Tafolla has shown no error, plain or otherwise, and relief is not required.

10.

¶39 Tafolla contends that he should have been charged with the specific misdemeanor "hate" crime of malicious intimidation or harassment because of race, color, religion, ancestry, national origin or disability (21 O.S.2011, § 850) instead of the general crime of assault and battery with a dangerous weapon (21 O.S.2011, § 645). Tafolla waived appellate review of this issue for all but plain error when he did not raise this challenge below. Again, to obtain relief, Tafolla must prove plain or obvious error affected the outcome of the proceeding. Hogan, 2006 OK CR 19, ¶ 38, 139 P.3d at 923.

¶40 It is true that "where a defendant's conduct is arguably covered by more than one criminal provision, the choice is a matter within the prosecutor's discretion, bounded by the constitutional requirement that the decision not be based on impermissible standards, such as race or religion." State v. Haworth, 2012 OK CR 12, ¶ 13, 283 P.3d 311, 316. It is also true, however, that specific statutes should be charged over general statutes in situations where charging under the general statute would thwart the legislative intent in enacting the more specific statute. See Franks v. State, 2006 OK CR 31, ¶ 6, 140 P.3d 557, 558-59. See also Lozoya v. State, 1996 OK CR 55, ¶¶ 17-18, 932 P.2d 22, 28-29. In interpreting statutory provisions, we look first at the plain meaning of the statutory language. State v. Farthing, 2014 OK CR 4, ¶ 5, 328 P.3d 1208, 1210. Furthermore, we construe statutes to determine the intent of the legislature, reconciling provisions, rendering them consistent and giving intelligent effect to each. King v. State, 2008 OK CR 13, ¶ 7, 182 P.3d 842, 844. "To determine legislative intent we may look to each part of the statute, similar statutes, the evils to be remedied, and the consequences of any particular interpretation." Id.

¶41 The law and facts here do not support Tafolla's claim that the misdemeanor "hate" crime statute prohibiting malicious intimidation or harassment because of race, color, religion, ancestry, national origin or disability is a more specific charge than felonious assault and battery with a dangerous weapon; the statutes at issue prohibit two separate and distinct types of conduct. While Section 850 prohibits the intimidation or harassment, by assault and battery, of another person because of that person's race, color, religion, ancestry, national origin or disability, the fact that this crime is a misdemeanor indicates the legislative intent that the conduct it seeks to prohibit and punish is not as serious as a felony offense. In contrast, Section 645 seeks to prohibit and punish as a felony an assault and battery, committed without justifiable or excusable cause, and committed with the intent to do bodily harm and with a dangerous weapon.

¶42 Tafolla was not prosecuted for the act of committing simple assault and battery upon the victim in order to harass or intimidate him because of his race. Rather, he was prosecuted for the brutal assault and battery he committed upon the victim with a dangerous weapon and with the intent to injure him. The assault and battery in this case was far more serious than a misdemeanor offense and there was no error, plain or otherwise, in the prosecutor's decision to charge Tafolla with the greater felony offense of assault and battery with a dangerous weapon.

¶43 Tafolla argues additionally that because he was charged with assault and battery with a dangerous weapon rather than with the misdemeanor "hate" crime, evidence of his involvement in the UAB gang was irrelevant and inadmissible. For reasons discussed above in Propositions 1 and 4 this argument is rejected. Relief is not required.

11.

¶44 Tafolla contends that he was denied constitutionally effective assistance of counsel. This Court reviews claims of ineffective assistance of counsel de novo, to determine whether counsel's constitutionally deficient performance, if any, prejudiced the defense so as to deprive the defendant of a fair trial with reliable results. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); Malone v. State, 2013 OK CR 1, ¶ 14, 293 P.3d 198, 206. Under this test, Tafolla must affirmatively prove prejudice resulting from his attorney's actions. Strickland, 466 U.S. at 693, 104 S.Ct. at 2067; Head, 2006 OK CR 44, ¶ 23, 146 P.3d at 1148. "To accomplish this, it is not enough to show the failure had some conceivable effect on the outcome of the proceeding." Id. Rather, Tafolla must show that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. Id. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. This Court need not determine whether counsel's performance was deficient if the claim can be disposed of on the ground of lack of prejudice. See Malone, 2013 OK CR 1, ¶ 16, 293 P.3d at 207. Tafolla has not shown on the record that but for counsel's actions the result of his trial would have been different. Because he has failed to establish prejudice from his attorney's actions, Tafolla's ineffective assistance of counsel claim is denied.

12.

¶45 Tafolla asserts that even if no individual error in his case merits reversal, the cumulative effect of the errors committed warrants a new trial or sentence modification. The cumulative error doctrine applies when several errors occurred at the trial court level, but none alone warrants reversal. Although each error standing alone may be of insufficient gravity to warrant reversal, the combined effect of an accumulation of errors may require a new trial. Martinez, 2016 OK CR 3, ¶ 85, 371 P.3d at 1119. Cumulative error does not deprive the defendant of a fair trial when the errors considered together do not affect the outcome of the proceeding. Baird v. State, 2017 OK CR 16, ¶ 42, 400 P.3d 875, 886. A cumulative error claim is baseless when this Court fails to sustain any of the alleged errors raised on appeal. Id. There were no errors, either individually or when considered together, that deprived Tafolla of a fair trial. This claim is denied.

DECISION

¶46 The Judgment and Sentence of the district court is AFFIRMED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2019), the MANDATE is ORDERED issued upon delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY
THE HONORABLE WILLIAM D. LaFORTUNE, DISTRICT JUDGE

 
 
 
 APPEARANCES AT TRIAL 
 
 
 APPEARANCES ON APPEAL
 
 
 
 
 TONI A. BEACH
 ATTORNEY AT LAW
 P.O. BOX 52755
 TULSA, OK 74152
 COUNSEL FOR DEFENDANT
 
 
 IAN M. SHAHAN
 ATTORNEY AT LAW
 1705 S. BALTIMORE AVE.
 TULSA, OK 74119
 COUNSEL FOR APPELLANT
 
 
 
 
 ISAAC SHIELDS
 KATE HUNTER
 ASST. DISTRICT ATTORNEYS
 500 S. DENVER, SUITE 900
 TULSA, OK 74103
 COUNSEL FOR STATE
 
 
 MIKE HUNTER
 ATTORNEY GENERAL OF OKLAHOMA
 JENNIFER B. WELCH
 ASSISTANT ATTORNEY GENERAL
 313 N.E. 21ST STREET
 OKLAHOMA CITY, OK 73105
 COUNSEL FOR APPELLEE
 
 
 

 

OPINION BY: ROWLAND, J.
LEWIS, P.J.: Concur
KUEHN, V.P.J.: Concur
LUMPKIN, J.: Concur
HUDSON, J.: Concur

FOOTNOTES

[1] Lara Maloy was Tafolla's girlfriend at the time of the incident. By the time of trial she was married to Tafolla and went by the name Lara Tafolla.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1988 OK CR 271, 765 P.2d 1215, McCARTY v. STATE
Discussed
 1994 OK CR 32, 876 P.2d 240, BRYSON v. STATE
Discussed
 1994 OK CR 44, 887 P.2d 1288, MAYES v. STATE
Discussed
 1996 OK CR 55, 932 P.2d 22, Lozoya v. State
Discussed
 2002 OK CR 40, 60 P.3d 4, McELMURRY v. STATE
Discussed at Length
 2006 OK CR 19, 139 P.3d 907, HOGAN v. STATE
Discussed at Length
 2006 OK CR 31, 140 P.3d 557, STATE v. FRANKS
Discussed
 2006 OK CR 44, 146 P.3d 1141, HEAD v. STATE
Discussed at Length
 2006 OK CR 45, 146 P.3d 1149, JACKSON v. STATE
Discussed
 2007 OK CR 38, 169 P.3d 1198, THOMPSON v. STATE
Discussed
 2008 OK CR 13, 182 P.3d 842, KING v. STATE
Discussed
 2008 OK CR 19, 188 P.3d 208, WILLIAMS v. STATE
Discussed
 2008 OK CR 26, 192 P.3d 1264, LOWERY v. STATE
Discussed
 2009 OK CR 13, 206 P.3d 1020, HANSON v. STATE
Discussed
 2010 OK CR 23, 241 P.3d 214, CUESTA-RODRIGUEZ v. STATE
Discussed
 2011 OK CR 6, 248 P.3d 918, HARMON v. STATE
Discussed
 2011 OK CR 10, 256 P.3d 1002, HARNEY v. STATE
Discussed
 2011 OK CR 13, 253 P.3d 997, JONES v. STATE
Discussed
 2011 OK CR 18, 254 P.3d 721, PRYOR v. STATE
Discussed
 2012 OK CR 12, 283 P.3d 311, STATE v. HAWORTH
Discussed
 2013 OK CR 1, 293 P.3d 198, MALONE v. STATE
Discussed at Length
 2013 OK CR 11, 313 P.3d 934, MILLER v. STATE
Discussed at Length
 2014 OK CR 4, 328 P.3d 1208, STATE v. FARTHING
Discussed
 2016 OK CR 3, 371 P.3d 1100, MARTINEZ v. STATE
Discussed at Length
 2016 OK CR 9, 372 P.3d 508, STEWART v. STATE
Discussed
 2017 OK CR 16, 400 P.3d 875, BAIRD v. STATE
Discussed
 2018 OK CR 20, 423 P.3d 617, TRYON v. STATE
Discussed
 2018 OK CR 22, 425 P.3d 399, TERRELL v. STATE
Discussed at Length
 2018 OK CR 31, 431 P.3d 929, BENCH v. STATE
Discussed at Length
 1999 OK CR 48, 993 P.2d 124, Davis v. State
Discussed at Length
 2000 OK CR 8, 2 P.3d 356, 71 OBJ 989, Welch v. State
Discussed
 1998 OK CR 19, 959 P.2d 1, 69 OBJ 1030, Wood v. State
Discussed
 1998 OK CR 40, 962 P.2d 3, 69 OBJ 2657, Torres v. State
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2403, Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion or Cumulative Nature of Evidence
Discussed
 12 O.S. 2404, Character Evidence Not Admissible to Prove Conduct - Exceptions - Other Crimes
Cited
 12 O.S. 2613, Prior Statements of Witnesses
Cited
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 11, Specific Statutes in Other Chapters as Governing - Acts Punishable in Different Ways
Cited
 21 O.S. 645, Assault, Battery, or Assault and Battery with Dangerous Weapon
Discussed
 21 O.S. 850, Malicious Harassment Based on Race, Color, Religion, Ancestry, National Origin, Disability - System of Reporting
Cited
 21 O.S. 1272, Unlawful Carry
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA