OSCN Found Document:PENA v. STATE

 

 
 PENA v. STATE2026 OK CR 8Case Number: F-2024-512Decided: 02/19/2026Mandate Issued: 02/19/2026THE COURT OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA
Cite as: 2026 OK CR 8, __ P.3d __

 

JESUS EFREN PENA, Appellant,
v.
THE STATE OF OKLAHOMA, Appellee.

O P I N I O N

ROWLAND, JUDGE:

¶1 Appellant Jesus Efren Pena appeals his Judgment and Sentence from the District Court of Craig County, Case No. CF-2022 107, for Acquiring Proceeds from Drug Activity, in violation of 63 O.S.2021, § 2-503

1. whether the State presented sufficient evidence to prove beyond a reasonable doubt the concealed currency in his car was derived from or intended to be used to facilitate a drug crime;

2. whether the district court's instruction on the elements of acquiring proceeds from drug activity relieved the State of its burden to prove the currency was derived from a drug crime;

3. whether the district court plainly erred by permitting drug courier-profile testimony as substantive evidence of guilt;

4. whether the district court erred in admitting the testimony of the State's expert;

5. whether the district court's remark during jury selection requires reversal;

6. whether prosecutorial misconduct denied him a fair trial;

7. whether he was denied effective assistance of counsel; and

8. whether an accumulation of errors rendered his trial unfair.

¶2 We find relief is not required and affirm the Judgment and Sentence of the district court.

Background

¶3 Pena's rental car was stopped on I-44 in Craig County by Trooper Caleb Cole for a traffic violation on August 31, 2022. Trooper Cole's partner, Trooper Aaron Lockney, deployed his drug dog for an open-air sniff and the dog alerted on the passenger side of Pena's car, indicating the presence of drugs in Pena's car. Pena admitted possessing "two prerolls" in his backpack, referring to marijuana rolled up for smoking. When asked about other drugs, guns, stolen property, or large amounts of money in the vehicle, Pena denied having any. A search, however, uncovered $2,000.00 in cash inside the backpack with the prerolled marijuana as well as over $48,000.00 packaged in seven vacuum-sealed bags in the trunk. The vacuum-sealed bags were hidden in a box housing a child's battery powered tricycle which had been opened and resealed with glue. The prosecution presented the testimony of the two troopers who testified about their training and experience in drug interdiction and their participation in the instant traffic stop. The prosecution also presented the testimony of an expert witness, Agent Branson Perry with the Oklahoma Bureau of Narcotics (OBN), who did not participate in the traffic stop, but offered his expert opinion that the concealed currency in this case was consistent with narcotic currency smuggling.

1. Sufficiency of the Evidence

¶4 Pena claims the State failed to prove beyond a reasonable doubt that the bulk currency hidden in his trunk inside the toy box totaling nearly $50,000.00 was derived from or connected to any violation of an Oklahoma or federal drug law. He maintains the State relied on general indicators and drug courier profiling to establish the missing proof. According to Pena, other than personal use marijuana, there were no drugs in the car, no drug residue or odor on the hidden currency, no evidence of any criminal history on his part, no incriminating statements made by him, and no documentation or paraphernalia suggesting drug sales to connect the money with illegal drug activity.

¶5 Evidence is sufficient to support a conviction if, viewing the evidence and all reasonable inferences from it in the light most favorable to the State, any rational trier of fact could find the defendant guilty beyond a reasonable doubt. Mason v. State, 2018 OK CR 37433 P.3d 1264 Spuehler v. State, 1985 OK CR 132709 P.2d 202Mason, 2018 OK CR 37Id. (quoting Mitchell v. State, 2018 OK CR 24424 P.3d 677McDaniel v. Brown, 558 U.S. 120, 130-31 (2010). We examine pieces of evidence together in context rather than in isolation, and we will affirm a conviction so long as, from the inferences reasonably drawn from the whole record, the jury might fairly have concluded the defendant was guilty beyond a reasonable doubt. Mason, 2018 OK CR 37

¶6 Our review of the record shows that any rational jury could have found beyond a reasonable doubt, from the circumstantial evidence presented, that the hidden bulk currency in Pena's trunk was the product of or related to illegal drug activity. Pena lied about the presence of the bulk currency when the trooper asked if he had any large sums of money in the car supporting a finding the currency was related to illegal activity. The way the currency was packaged was the key to the prosecution's proof the money was related to drug activity. It was in seven vacuum sealed bundles in rubber-banded increments of $1,000.00. That amount of currency concealed in a child's toy car box in vacuum sealed bundles supported the reasonable inference that the currency was derived from or intended to be used to facilitate a drug crime. For these reasons, we deny Pena's sufficiency of the evidence challenge.

2. Jury Instructions

¶7 Pena claims jury instruction error requires relief. He maintains the district court's instruction on the elements for the acquisition of drug proceeds from drug activity did not comport with 63 O.S.2021, § 2-503See Posey v. State, 2024 OK CR 10548 P.3d 1245cert. denied, 145 S.Ct. 1142 (2025). In performing plain error review, we must determine whether Pena has shown the commission of an actual error, which is plain or obvious, that affected his substantial rights. Id.; Washington v. State, 2023 OK CR 22541 P.3d 852Hogan v. State, 2006 OK CR 19139 P.3d 907Washington, 2023 OK CR 22Posey, 2024 OK CR 1020 O.S.2011, § 3001.1Posey, 2024 OK CR 10

¶8 The district court instructed Pena's jury that the elements of acquiring drug proceeds from drug activity in violation of 63 O.S.2021, § 2-503or engage in transactions involving proceeds knowing [sic] to be derived from any violation of the Uniform Controlled Dangerous Substances Act." (emphasis added). According to Pena, the court's use of the disjunctive "or" to separate the two ways a person violates Section 2-503.1(A) without separating the ensuing mens rea requirement into a discrete element erroneously allowed his jury to convict based upon concealment of the currency alone rather than requiring a finding beyond a reasonable doubt that the concealed money was derived from illegal drug offenses. The State concedes the court's instruction was no model of clarity but maintains "any reasonable jury would have understood what facts were necessary to find beyond a reasonable doubt" for conviction under Section 2-503.1(A).

¶9 There is no uniform instruction on the elements of acquiring drug proceeds from drug activity. A plain reading of Section 2-503.1(A) shows a violation of the statute requires proof the accused (1) knowingly or intentionally (2) either obtained money and hid it or engaged in transactions with money (3) knowing that money was related to drug activity, i.e., the defendant knew the money was derived from or for use in an illegal drug transaction. mens rea clause (known to be derived from any violation of the Uniform Controlled Dangerous Substances Act) as modifying both the act of concealment or engagement. That interpretation is compatible with and bolstered by the court's description of the offense in Instruction No. 20. 

3. and 4. Drug Courier Profile and Expert Testimony

¶10 Pena argues in his third and fourth propositions that the district court erroneously admitted, via expert witnesses, drug courier profile evidence as substantive evidence of guilt. In Proposition 3, he specifically complains of the arresting troopers' "profiling testimony related to [their] observations prior to searching his vehicle." 

¶11 Whether to admit evidence is a decision within the discretion of the trial court whose decision will not be disturbed on appeal absent a clear showing of abuse, accompanied by prejudice to the accused. See Jackson v. State, 2006 OK CR 45146 P.3d 1149see also Tryon v. State, 2018 OK CR 20423 P.3d 617Day v. State, 2013 OK CR 8303 P.3d 291Posey, 2024 OK CR 10Perez v. State, 2023 OK CR 1525 P.3d 46Neloms v. State, 2012 OK CR 7274 P.3d 161See Vance v. State, 2022 OK CR 25519 P.3d 526

¶12 Beginning about forty years ago, federal courts began to reject the use of drug courier profile evidence as substantive evidence of guilt. See, e.g., United States v. Hernandez-Cuartas, 717 F.2d 552, 555 (11th Cir. 1983). The rationale was that such evidence was nothing more than the investigative techniques of law enforcement officers and defendants should be convicted based on evidence against them rather than on techniques utilized by law enforcement officers investigating criminal activity. Hence, allowing the prosecution to prove how a typical drug courier behaves, and then allowing an expert witness to testify that the defendant fits that profile, is unfair and inadmissible to prove his or her guilt. 

¶13 Rather than describing the evidence in this case as drug courier profile evidence and then debating its admissibility as substantive evidence of guilt, we find the better approach is to apply the rules of evidence to evaluate the admissibility of expert testimony. See United States v. McDonald, 933 F.2d 1519, 1522-23 (10th Cir. 1991). The first question is always whether the evidence is relevant under 12 O.S.2021, § 240112 O.S.2021, § 2403Romano v. State, 1995 OK CR 74909 P.2d 92

¶14 Applying this framework to the instant case, we find no error in the admission of the testimony of the two state troopers. They participated in Pena's traffic stop and testified about the drug trade, the flow of drugs and money through Oklahoma, and specific factors about the packaging and secreting of currency which is indicative of unlawful proceeds. Although some of this testimony would arguably qualify as drug courier profile evidence as defined by at least some of the cases relied upon by Pena, the labeling of the testimony is not the proper inquiry. The discovery of fifty-thousand dollars hidden in vacuum sealed packages secreted in a child's toy box in a rental car driving cross-country might seem curious to the average juror, but most jurors have no frame of reference to know exactly what that evidence might mean. Unlike the cases cited by Pena, Pena's case does not involve illegal drugs. Instead, his case involves U.S. currency which is not illegal to possess unless it is derived from or intended to be used to facilitate a drug crime. See 63 O.S.2021, § 2-503See Posey, 2024 OK CR 10

¶15 The expert testimony of Agent Perry, however, is problematic. He was not involved in the investigation but rather testified as an expert witness in illegal drug trafficking and bulk currency linked to the drug trade. Upon the State's motion, he was allowed to attend the trial and hear the testimony of Troopers Cole and Lockney about the facts of the investigation. The prosecutor then went through these witnesses' testimony, asking Agent Perry whether each fact was consistent or inconsistent with drug trafficking. His testimony, for all intents and purposes, told the jury what conclusion to reach, not because he gave expert testimony about what facts one might expect to find in the investigation of interstate bulk currency smuggling, but because he sat through the entire trial, heard the entirety of the evidence, and then combed through each bit of it stating that each was consistent with drug trafficking. His testimony crossed the line of proper expert opinion testimony outlined in Romano, and we caution prosecutors to exercise great care in keeping expert testimony within the proper confines of the Evidence Code.

¶16 In cases involving evidentiary error, "the proper inquiry to determine if relief is required is whether this Court has 'grave doubts' that the outcome of the trial would have been materially affected had the error not occurred." Neloms, 2012 OK CR 7Mitchell v. State, 2005 OK CR 15120 P.3d 1196

5. Due Process

¶17 Pena claims the district court erred in describing the case during jury selection when it stated that "[t]his is a case involving drug proceeds[.]" Because the issue in dispute was whether the hidden currency was connected to a drug crime, he maintains the court's remark invaded the province of the jury, relieved the State of its burden, thwarted the presumption of innocence, and violated his due process right to a fair trial. Because Pena failed to preserve this claim with an objection, we review this claim for plain error only and find none.

¶18 The record shows the remark was made early on when the court asked the panelists if the subject matter involved in the case affected anyone's ability to serve. That the panelists would have interpreted the remark as an opinion on the evidence is implausible given the circumstances of this case and the court's instruction that no statement or ruling by the court was intended to indicate any opinion concerning the facts or the evidence. We presume juries follow their instructions and there is nothing in the record to suggest the jury ignored the court's instruction and/or that the court's offhand remark influenced the jury's view of the case, especially given the source of the currency was a primary focus of the trial and was clearly in dispute. This claim is denied.

6. Prosecutorial Misconduct

¶19 Pena claims prosecutorial misconduct denied him a fair trial. He claims the prosecutor (1) told the jury to consider the Information as substantive evidence; (2) told the jury the maximum punishment was required by law; (3) shifted the burden of proof; (4) cast aspersions on the defense; (5) elicited and used drug courier profiling testimony as substantive evidence of guilt; and (6) made improper comments during jury selection. This Court reviews preserved misconduct claims for an abuse of discretion and unpreserved claims for plain error only. See Reece v. State, 2025 OK CR 10Tafolla v. State, 2019 OK CR 15446 P.3d 1248

¶20 We reject allegations of prosecutorial misconduct unless the actions of the prosecutor "effectively deprived the defendant of a fair trial or a fair and reliable sentencing proceeding." Parker v. State, 2021 OK CR 17495 P.3d 653Lee v. State, 2018 OK CR 14422 P.3d 782Parker, 2021 OK CR 17See Pryor v. State, 2011 OK CR 18254 P.3d 721

¶21 A review of the record shows relief is not required. Most of the challenged remarks fell within the wide latitude the parties enjoy to discuss the evidence or were in response to defense counsel's closing argument. Any borderline remarks were ameliorated by the court's jury instructions, specifically the instruction that argument of counsel is not evidence, and we find any borderline remarks did not, individually or cumulatively, affect the verdict. This claim is denied.

7. Ineffective Assistance of Counsel

¶22 Pena claims he was denied effective assistance of counsel because defense counsel failed to preserve the errors alleged in Propositions 2, 3, 5, and 6. We have rejected these claims on the merits and have found Pena was not denied a fair trial because of jury instruction error, the admission of improper evidence, the court's challenged remark during jury selection or prosecutorial misconduct. See Propositions 2, 3, 5, and 6, supra. Accordingly, Pena cannot show the necessary prejudice to prevail on his ineffective assistance of counsel claim. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Malone v. State, 2013 OK CR 1293 P.3d 198

8. Cumulative Error

¶23 Pena claims that even if no individual error in his case merits relief, the cumulative effect of the errors committed requires reversal and a new trial or sentence modification. "The cumulative error doctrine applies when several errors occurred at the trial court level, but none alone warrants reversal." Tafolla, 2019 OK CR 15Id. And there can be no accumulation of error if there is no individual error. Lavorchek v. State, 2019 OK CR 13443 P.3d 573

DECISION

¶24 The Judgment and Sentence of the district court is AFFIRMED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2026), the MANDATE is ORDERED issued upon delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF CRAIG COUNTY
THE HONORABLE SHAWN S. TAYLOR, DISTRICT JUDGE

 
 
 APPEARANCES AT TRIAL
 
 JAY K. RAMEY
 ATTORNEY AT LAW
 1408 S. DENVER AVENUE
 TULSA, OK 74119
 ATTORNEY FOR DEFENDANT
 APPEARANCES ON APPEAL
 
 CHAD JOHNSON
 DEPUTY DIVISION CHIEF
 APPELLATE DIVISION EAST
 111 N. PETERS AVE., SUITE 100
 NORMAN, OK 73069
 COUNSEL FOR APPELLANT
 
 
 ERIN L. OQUIN
 ASST. DISTRICT ATTORNEY
 210 WEST DELAWARE AVE.
 SUITE 202
 VINITA, OK 74301
 COUNSEL FOR STATE
 
 GENTNER F. DRUMMOND
 ATTORNEY GENERAL OF
 OKLAHOMA
 RANDALL YOUNG
 ASST. ATTORNEY GENERAL
 313 N.E. 21ST STREET
 OKLAHOMA CITY, OK 73105
 COUNSEL FOR APPELLEE
 
 

OPINION BY: ROWLAND, J.
LUMPKIN, P.J.: Concur
MUSSEMAN, V.P.J.: Dissent
LEWIS, J.: Concur in Results
HUDSON, J.: Concur

FOOTNOTES

63 O.S.2021, § 2-402

It is unlawful for any person knowingly or intentionally to receive or acquire proceeds and to conceal such proceeds, or engage in transactions involving proceeds, known to be derived from any violation of the Uniform Controlled Dangerous Substances Act, Section 2-101 et seq. of this title, or of any statute of the United States relating to controlled dangerous substances as defined by the Uniform Controlled Dangerous Substances Act, Section 2-101 et seq. of this title .

 

Wilson v. State, 1994 OK CR 5871 P.2d 46Wilson was correctly decided but it does not help in resolving this case. Here, the evidence was not introduced to show Pena's character, and his character was not in issue other than the obvious charged allegation that he was in the commission of the felony of transporting drug proceeds.

See, e.g., United States v. Williams, 957 F.2d 1238, 1242-43 (5th Cir. 1992); United States v. Jones, 913 F.2d 174, 177 (4th Cir. 1990).

See, e.g., State v. Brown, 370 So.2d 547, 554 (La. 1979); State v. Williams, 525 N.W.2d 538, 547-49 (Minn. 1994).

 

 

MUSSEMAN, J. DISSENTING:

¶1 I walk hand in hand with the majority through its opinion until the point when relief is denied for the admission of expert testimony under Section 2702 that invaded the province of the jury. Section 2702 sets out the guardrails for expert testimony because expert testimony is influential. The presentation of Agent Perry's testimony in this case passed through those barriers. The majority acknowledges that the agent's testimony was problematic and crossed the line set by Romano, meaning that the testimony told the jury what result to reach. In Simpson v. State, 1994 OK CR 40876 P.2d 690

¶2 Therefore, I respectfully dissent.

 

 

LEWIS, CONCURRING IN RESULT:

¶1 I concur that the evidence was sufficient to support the conviction, and that no error occurred in the admission of the arresting state troopers' expert testimony about drug trafficking and the typical modus operandi of drug and currency couriers. Applying the deferential abuse of discretion standard, I would also hold that the Agent's expert testimony was properly admitted under Section 2702 of the Evidence Code. A proper foundation established that the testimony involved specialized knowledge, it was useful to the trier of fact, and it did not dictate to jurors the conclusion they should reach on the ultimate issue. The expert witness's credibility was subject to challenge on cross-examination. The defense was free to offer contrary expert opinion. The parties were able to marshal arguments about the soundness of the expert's opinions. And the jury was not bound to credit the Agent's inference that the money was drug proceeds, but as the Court admits in Proposition One, it was altogether reasonable to do so.

¶2 Granting the trial court considerable leeway in ruling on proffered expert testimony, Section 2702 and case law generally require that if there are "good grounds" for an expert's conclusion, it should be admitted for the jury's consideration. See Bonner v. ISP Techs., Inc., 259 F.3d 924, 929 (8th Cir. 2001) (holding that even if a judge believes there are better grounds for some alternative conclusions, if there are good grounds for an expert's conclusion, it should be admitted); see also Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence").

¶3 The State's expert had "good grounds" for his opinions, in the sense that they were fact-based and expertly informed. Any weakness or potential bias was fully subject to exploration within the adversary process. Such evidence is indeed prejudicial and undeniably suggests strong inferences consistent with a conclusion of guilt, but admission of this evidence generally advanced the ultimate trial objective, which is the fair and reliable ascertainment of truth. There was no error in the admission of the Agent's expert testimony.